**STATE of Missouri, Respondent,**

v.

**Robert M. OLIVER, Appellant.**

**No. SC 89888.**

Supreme Court of Missouri,
En Banc.

Aug. 4, 2009.

Nancy A. McKerrow, Office of Public Defender, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Jamie P. Rasmussen, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

A mother of two children, ages five and eight, filed a child abuse report, alleging that Robert Oliver had taken photographs of her children without their clothes and

had displayed these photographs to the children on a computer. In response to this report, the police and a division of family services (DFS) investigator went to Oliver's home. Oliver let the officers inside his home, but refused to allow them to take the computer and digital camera. After Oliver left the residence, the police obtained his wife's consent to search the office and seized the computer, digital camera and camera card, and several disks. A warrant was obtained two weeks later to search these items, which recovered several photographs of the children and files downloaded from the internet containing adult and child pornography. Oliver was charged with sexual exploitation of a minor and promoting child pornography, and the photographs and internet images were admitted as evidence at trial. The jury convicted Oliver of two counts of sexual exploitation of a minor pursuant to section 573.023 [1] and two counts of promoting child pornography in the first degree pursuant to section 573.025. [2]

Oliver appeals, arguing the trial court erred in overruling the motion to suppress the computer, camera, and camera card and the information retrieved from these items. Oliver claims that his wife's consent to search the office and seize the items was invalid because of his prior objection; therefore, the seizure of the items violated his rights under the 4th and 14th Amendment and article I, section 15 of the Missouri Constitution. Further, he argues that any information recovered from these items was also inadmissible because the warrant application relied on information obtained from the prior illegal seizure. He also argues that there was insufficient evidence to support the convictions of sexual exploitation of a minor and promoting child pornography in the first degree. This Court granted transfer. Mo. Const. art. V, sec. 10.

The judgment is affirmed. The trial court did not err in overruling the motion to suppress because, even assuming the search was constitutionally invalid, [3] these items were admissible evidence pursuant to the inevitable discovery doctrine. The photographs and images recovered from these items were also admissible because the items were searched pursuant to a valid warrant. Lastly, there was sufficient evidence to support the convictions.

## I. Facts

In the afternoon of November 6, 2005, brothers K.K., eight years old, and C.M., five years old, went over to play with Oliver's eight-year-old son. Later that evening, C.M. told his mother that "they

---

1. All statutory references are to RSMo 2000, unless otherwise noted.
 Section 573.023 provides:
 (1) A person commits the crime of sexual exploitation of a minor if, knowing its content and character, such person photographs, films, videotapes, produces or otherwise creates obscene material with a minor or child pornography.
 (2) Sexual exploitation of a minor is a class B felony unless the minor is a child, in which case it is a class A felony.

2. Section 573.025 provides in pertinent part:
 (1) A person commits the crime of promoting child pornography in the first degree if,

knowing of its content and character, such person possesses with the intent to promote or promotes obscene material that has a child as one of its participants or portrays what appears to be a child as a participant or observer of sexual conduct.
 (2) Promoting child pornography in the first degree is a class B felony unless the person knowingly promotes such material to a minor, in which case it is a class A felony....

3. The Court does not reach the issue of whether Oliver's wife's consent was valid.

had taken naked pictures" while at Oliver's house. K.K. confirmed his brother's story, stating that Oliver had "taken pictures of them with their clothes off." Their mother reported the incident to the police, who were dispatched to her home to talk with the children.

After speaking with the children, Detective Hill, two deputies, and an investigator with DFS went to Oliver's residence. Oliver answered the door, and the detective explained the allegations. Oliver stated that he took pictures of the children previously in the afternoon, but "it was just of their bellies." The detective asked Oliver if he owned a digital camera, and Oliver said that he did. Oliver began walking out of the living room, and the detective followed behind him.

Oliver went into the office and picked up a digital camera. The detective asked for consent to search the digital camera and computer tower he saw in the room. Oliver became upset and told the detective that he needed to obtain a search warrant. The detective called Detective Bailey and instructed him to initiate the process to obtain a warrant for the digital camera and the computer tower. During this time, the DFS investigator was speaking to Oliver's wife in a bedroom. Oliver's two children, ages eight and eleven, remained in their bedrooms.

After Oliver was finished speaking with the officers, the DFS investigator addressed both Oliver and his wife. She advised them that, based on the allegations, they had three options: Oliver's wife and children could leave the home, Oliver could leave the home, or the children could be taken into custody. Oliver stated that he would leave the home and departed the residence.

After Oliver left, the detective asked Oliver's wife if they could search the office and take the computer tower and digital camera. She agreed and signed a permission to search form. Oliver's wife, the detective, and two deputies went into the office. The officers took the digital camera and computer tower, as well as thirteen floppy disks and one CD-rewritable from a desk drawer opened by Oliver's wife.

On November 21, 2005, Detective Bailey filed an application and affidavit for a search warrant to search the computer, the digital camera with flash memory card, the CD–RW, and the disks. A warrant was issued to search the items the same day.

Oliver was charged with sexual exploitation of a minor pursuant to section 573.023 and promoting child pornography in the first degree pursuant to section 573.025. Prior to trial, Oliver filed a motion to suppress the computer, camera and memory card, disks and CD–RW, arguing that the seizure of the items violated his 4th amendment rights. A preliminary hearing was held at which Detective Hill and Oliver's wife testified. The trial court overruled the motion.

A jury trial was held in July 2007. C.M., then seven years old, testified that Oliver had taken pictures of his brother and Oliver's son with their clothes off. He also stated that he viewed the pictures on the computer screen. K.K., then ten years old, testified that Oliver took pictures of the boys with a digital camera and "put them on the computer." Oliver's son testified that his father had taken pictures of himself, K.K., and C.M. in the office but could not remember if they had their clothes on or not. Oliver did not testify at trial.

The detective who performed the search of the camera card, hard drive and disks testified that there were 27 photographs on the camera card created on November 6, 2005, and deleted the same day. Ten of

the photographs were able to be retrieved. The detective also found a folder on the hard drive containing child and adult pornography images from various internet sites. From the data attached to the images, the detective concluded that most of the images had been viewed at least twice.

Ten pictures from the camera card were admitted into evidence as well as the numerous pornographic images recovered from the hard drive. Several of the photographs showed the boys with their pants pulled down and genitals exposed. One picture showed a boy bending over and using his hands to manually separate his buttocks, exposing his anus to the camera. A second picture showed a different boy bending over and attempting to manually separate his buttocks to expose his anus to the camera.

Oliver objected to the admission of the camera, computer, and disks, the information recovered from these items, and the testimony from the detective. He argued that this evidence was inadmissible because the items were seized without a warrant and without proper consent. The trial court overruled the objections. At the close of both the state's evidence and all evidence, Oliver filed a motion for judgment of acquittal based on insufficient evidence; both were overruled.

Oliver was charged with two counts of sexual exploitation of a minor for creating child pornography with a minor and two counts of promoting child pornography in the first degree for possessing with the intent to exhibit the photographs and internet images. The jury found Oliver guilty for all counts, and Oliver was sentenced to concurrent terms of fifteen years for sexual exploitation of a minor and ten years for promoting child pornography. Oliver filed a motion for new trial, which was overruled. Oliver appeals.

## II. Analysis

### A.

▮▮▮ This Court reviews a trial court's ruling on a motion to suppress in the light most favorable to the ruling and defers to the trial court's determinations of credibility. *State v. Edwards*, 116 S.W.3d 511, 530 (Mo.banc 2003). The inquiry is limited to whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous. *Id.* The Court will consider evidence presented at a pretrial hearing as well as any additional evidence presented at trial. *Id.*

Oliver challenges the trial court's ruling on the motion to suppress on two grounds. First, he argues the computer, camera, and camera card were inadmissible because the seizure of the items was in violation of his constitutional rights. Second, he argues the information recovered from these items was inadmissible because the warrant was invalid.

### i.

▮▮▮ The 4th amendment to the United States Constitution guarantees citizens the right to be free from "unreasonable searches and seizures." Article I, section 15 of the Missouri Constitution provides the same guarantees against unreasonable search and seizures; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution.

▮▮▮ As a general rule, warrantless searches and seizures inside a home are presumptively unreasonable and unconstitutional. *State v. Rutter*, 93 S.W.3d 714, 723 (Mo.banc 2002). "Evidence discovered and later found to be derivative of a Fourth Amendment violation must be excluded as fruit of the poisonous tree." *State v. Miller*, 894 S.W.2d 649, 654 (Mo. banc 1995).

■ The inevitable discovery doctrine, as an exception to this rule, provides that evidence may be admissible, despite a constitutionally invalid search, if law enforcement personnel would have ultimately or inevitably discovered the evidence. *Rutter,* 93 S.W.3d at 726. To show that the evidence would have inevitably been discovered, the state must prove by a preponderance of the evidence:

(1) that certain standard, proper and predictable procedures of the local police department would have been utilized and

(2) those procedures inevitably would have led to discovery of the challenged evidence through the state's pursuit of a substantial, alternative line of investigation at the time of the constitutional violation.

*Id.* (citing *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)).

The officers did not obtain a warrant to search the office and seize the items; rather, the detective conducted the search and seizure based on Oliver's wife's consent. The validity of this consent does not affect the admissibility of the items because had the detective not relied on the consent, he would have discovered this evidence pursuant to a search warrant.

After Oliver refused consent, the detective immediately called another detective and instructed him to prepare a warrant application. The detective's response is evidence of the standard police procedure as well as evidence that this procedure would have been utilized. The detective would have waited for the warrant to issue given the fact that he cancelled the warrant only after he received Oliver's wife's consent and testified that he would not have left the house that evening without the computer and camera. There was also sufficient probable cause to issue the warrant at that time based on the initial child abuse report as well as Oliver's admission to photographing the children with a digital camera. A search pursuant to this warrant would have led to the discovery of this evidence.

The computer, camera, and camera card are admissible pursuant to the inevitable discovery doctrine. The decision to admit these items was not clearly erroneous and Oliver's point is denied.

### ii.

■ Oliver argues that the warrant obtained two weeks after the seizure of the items to search the computer, camera, camera card, and disks is invalid because the application relied upon information to establish probable cause obtained from the prior illegal search and seizure.

■ The fact that illegally obtained evidence is included in the affidavit does not invalidate the warrant. *State v. Mahsman* 157 S.W.3d 245, 251 (Mo.App.2004). The ultimate inquiry "is not whether the affidavit contained allegations based upon illegally obtained evidence but whether, if setting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause." *Id.*

Even assuming the seizure of the items was constitutionally invalid, the only information acquired from this seizure in the warrant application was the make, model, and serial numbers of the hard drive and camera. The affidavit primarily relied on the allegations in the initial child abuse report as well as other general information regarding the use of computers and child pornography. This information was available to the officers prior to the seizure and was sufficient to establish probable cause to search the camera card, hard drive and disks.

The initial seizure did not affect the validity of the warrant obtained to search these items. As a result, the information recovered was admissible. The trial court's decision was not clearly erroneous. Oliver's point is denied.

### B.

Oliver argues that the trial court erred in overruling Oliver's motions for judgment of acquittal because the state failed to provide sufficient evidence for the jury to find guilt beyond a reasonable doubt of the offense of sexual exploitation of a minor and promoting child pornography in the first degree.

When reviewing the sufficiency of evidence supporting a criminal conviction, the Court gives great deference to the trier of fact. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo.banc 1998). Appellate review "is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id.* In applying this standard, "the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *Id.*

### i.

Oliver argues that the photographs merely depict nude children and do not depict "sexual conduct," which is required for a conviction of sexual exploitation of a minor pursuant to section 573.023. In further support of his position, he argues that the legislature did not intend to criminalize photographing nude children pursuant to section 573.023 because section 568.060,[4] the offense of child abuse, already criminalizes this conduct.

Section 573.023 provides:

[a] person commits the crime of sexual exploitation of a minor if, knowing of its content and character, such person photographs, films, videotapes, produces or otherwise creates obscene material with a minor or child pornography.

Oliver was charged with sexual exploitation of a minor by creating child pornography. "Child pornography" is defined in section 573.010(2) as:

any obscene material or performance depicting sexual conduct, sexual contact, or a sexual performance as those terms are defined in section 556.061, RSMo, and which has as one of its participants or portrays as an observer of such conduct or contact, or performance a child under the age of eighteen.

Specifically, the jury had to find that Oliver created obscene material by photographing K.K. and C.M. as a nude person

4. Section 568.060 provides, in pertinent part:
1. A person commits the crime of abuse of a child if such person:
(1) Knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old; or
(2) Photographs or films a child less than eighteen years old engaging in a prohibited sexual act or in the simulation of such an act or who causes or knowingly permits a child to engage in a prohibited sexual act or in the simulation of such an act for the purpose of photographing or filming the act.

2. As used in this section "**prohibited sexual act**" means any of the following, whether performed or engaged in either with any other person or alone: sexual or anal intercourse, masturbation, bestiality, sadism, masochism, fetishism, fellatio, cunnilingus, any other sexual activity or nudity, if such nudity is to be depicted for the purpose of sexual stimulation or gratification of any individual who may view such depiction. . . .

and that such material depicted a sexual performance.

"Obscene" is defined in section 573.010(9), which provides:

[A]ny material or performance is obscene if, taken as a whole:

(a) Applying contemporary community standards, its predominant appeal is to prurient interest in sex; and

(b) The average person, applying contemporary community standards, would find the material depicts or describes sexual conduct in a patently offensive way; and

(c) A reasonable person would find the material lacks serious literary, artistic, political or scientific value;

"Sexual performance" is defined in section 556.061(31) as "any performance, or part thereof, which includes sexual conduct by a child who is less than seventeen years of age."

Both the definitions of "obscene" and "sexual performance" require the finding that the pictures depicted "sexual conduct." "Sexual conduct" is defined by section 556.061(29), RSMo Supp.2004, as:

... acts of human masturbation; deviate sexual intercourse; sexual intercourse; or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or the breast of a female in an act of apparent sexual simulation or gratification.[5]

The two photographs of a boy bending over with his unclothed buttocks toward the camera and separating his buttocks with his hands depict sexual conduct. These photographs contain physical contact with the child's unclothed buttocks. This contact is an act of apparent sexual simulation, given the nature of this position, the fact that this position is the primary object of the photograph, and the circumstances under which these photographs were taken.

 The fact that Oliver's conduct in this case could support a conviction under both section 568.060 and section 573.023 does not imply that either of the statutes is a useless act or changes the meaning or requirements of the other offense. When a single act may constitute an offense under two different statutes, the state may elect which statute to proceed under. *See State v. Koen,* 468 S.W.2d 625, 629 (Mo. 1971).

There was sufficient evidence that these photographs depicted sexual conduct for the jury to find Oliver guilty beyond a reasonable doubt for the offense of sexual exploitation of a minor. Oliver's point is denied.

**ii.**

 Oliver also argues that there was insufficient evidence to support a finding that he intended to exhibit the photographs of the children or the images down-

---

**5.** "Sexual conduct" is also defined in section 573.010(14) and would be the applicable definition for the use of "sexual conduct" in the definition of "obscene." The definitions are substantially similar and the portion of the definition to determine this case is identical to the definition of "sexual conduct" in chapter 556, cited above. Section 573.010(14) defines "sexual conduct" as:

... actual or simulated, normal or perverted acts of human masturbation; deviate

sexual intercourse; sexual intercourse; or *physical contact with a person's clothed or unclothed genitals, pubic area, buttocks,* or the breast of a female *in an act of apparent sexual stimulation or gratification* or any sadomasochistic abuse or acts including animals or any latent objects in an act of apparent sexual stimulation or gratification ... (emphasis added).

loaded from the internet containing child pornography.

Section 573.025 provides that

(1) A person commits the crime of promoting child pornography in the first degree if, knowing of its content and character, such person possesses with the intent to promote or promotes obscene material that has a child as one of its participants or portrays what appears to be a child as a participant or observer of sexual conduct.

(2) Promoting child pornography in the first degree is a class B felony unless the person knowingly promotes such material to a minor, in which case it is a class A felony . . .

Section 573.010(12) defines "promote" as "to manufacture, issue, sell, provide, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same, by any means including a computer . . ."

▆▆▆▆▆ Oliver was charged with possessing the photographs and internet pornography with the intent to exhibit obscene material. "Exhibit" is not defined by statute. In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary. *State v. Eisenhouer*, 40 S.W.3d 916, 920 (Mo.banc 2001). "Exhibit" is defined as "to present to view; show; display." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 796 (1993). Further, the defendant's intent is most often proved by circumstantial evidence and may be inferred from surrounding facts or the act itself. *See State v. McIntyre*, 63 S.W.3d 312, 315 (Mo.App.2001).

There was sufficient evidence for the jury to find that Oliver not only intended to exhibit the photographs of the children, but did exhibit the photographs. K.K. testified at trial that Oliver took photographs of the children without their clothes on and put the photographs on the computer. C.M. testified that he viewed these photographs on the computer screen after taking the photographs.

Oliver argues that the fact that he deleted the photographs negates any intent to exhibit them because he lacked the sophisticated knowledge to recover them. The plain language of the statute does not require that Oliver possess with the intent to exhibit at the time of trial. The jury was instructed to find that Oliver possessed with the intent to exhibit the images on or about November 3, 2005.[6] There was sufficient evidence to support a finding that Oliver possessed the images on or about that date with the intent to exhibit them, regardless of any subsequent deletion.

There was also sufficient evidence that Oliver intended to exhibit the internet pornography. The detective testified that the images were recovered from the hard drive, that Oliver had access to these images, and had viewed these images more than once. The access to the images combined with the testimony regarding the previous exhibition of photographs of a similar nature on a computer screen to the children is sufficient evidence for the jury to infer that Oliver also had the requisite intent to exhibit the internet pornography as well.

There was sufficient evidence for the jury to find that Oliver intended to exhibit

**6.** The jury instructions require a finding of possession with the intent to exhibit the photographs of the children "on or about November 3, 2005." The testimony at trial supported a finding that Oliver took the photographs of the children on November 6, 2005. The state explained this discrepancy in closing arguments and neither party raised this issue on appeal.

the photographs of the children as well as the internet images recovered from the hard drive. Oliver's point is denied.

## III.

The judgment is affirmed.

All concur.