778 S.E.2d 483

The STATE, Respondent,

v.

Sarah Denise CARDWELL, Appellant.

Appellate Case No. 2012–213334.
No. 5351.

Court of Appeals of South Carolina.

Heard Sept. 9, 2014.
Decided Sept. 2, 2015.
Rehearing Denied Nov. 25, 2015.

418

420

Appellate Defender, Benjamin John Tripp, of Columbia, for appellant.

Attorney General, Alan McCrory Wilson, and Assistant Attorney General, William M. Blitch Jr., both of Columbia, for respondent.

McDONALD, J.

Sarah Cardwell (Cardwell) appeals her conviction for two counts of unlawful conduct toward a child and two counts of first-degree sexual exploitation of a minor. Cardwell argues the circuit court erred in refusing to suppress her laptop computer and a video seized from the laptop without a search warrant. She contends that the search and seizure violated her Fourth Amendment rights because law enforcement instructed a computer technician to locate, play, and copy the video prior to obtaining a search warrant. Cardwell further asserts that her constitutional rights were violated when the Johnsonville Police Department provided the video to a Georgetown County Sheriff's Office investigator, who viewed it prior to obtaining a warrant. We affirm.

**FACTS/PROCEDURAL HISTORY**

In November 2010, Cardwell took her laptop computer to David Marsh (Marsh) for repair at his home office, which is located in Florence County. Marsh explained to Cardwell that repairing the laptop would entail downloading the data

from the hard drive, rebuilding the hard drive, and then reloading the previously extracted data to the hard drive. Because Cardwell's laptop would not boot, Marsh removed the hard drive from her computer and connected it to his own computer to download the data.

On December 8, 2010, as Marsh was downloading Cardwell's data to his computer, Johnsonville Police Chief Ron Douglas (Chief Douglas) entered Marsh's home office to deliver some packages. When Marsh left the office to take the packages to his garage, Chief Douglas saw an image of "a nude child maybe holding a ladies' bra up across his chest." Chief Douglas then told Marsh, "I just saw something go across the screen, can you back it up?" Marsh subsequently located the image of a male child wearing nothing but a pink bra and determined that the questionable image was actually part of a video. Chief Douglas indicated that he wanted to see the video, so Marsh played "just a little bit . . . possibly a minute" of the video.

The video shows Cardwell's two minor children (Minor 1 and Minor 2) dancing naked with Cardwell's co-defendant and then-boyfriend, Michael Cardwell, who was also naked. Although Sarah Cardwell does not appear in the video, her voice is heard directing the children. In 2007, when the video was filmed, Minor 2 was seven years old and his sister, Minor 1, was six years old. The minor children had just finished bathing before they ran into the living room and pulled down Michael Cardwell's gym shorts, at which point Sarah Cardwell started filming. The video shows Minor 2 "touching his front private part." The video also shows Michael Cardwell "flapping" his own penis back and forth and "tweaking" his own nipples. At trial, Minor 2 testified that his mother and Michael Cardwell instructed him to touch his penis.

Because he was concerned about losing the video in the event of a hard drive crash, and because Cardwell lived in Georgetown County rather than Florence County, Chief Douglas instructed Marsh to make a copy of the video and shut down the laptop. Marsh turned over the copy of the video and Cardwell's laptop to Chief Douglas, who subsequently submitted them to Investigator Phillip Hanna (Investigator Hanna) of the Georgetown County Sheriff's Department.

On December 10, 2010, Investigator Hanna watched the video with Marsh and Chief Douglas at the Johnsonville Police Department. Investigator Hanna then obtained a search warrant "for everything on the computer" prior to sending Cardwell's laptop computer to the Charleston computer lab for analysis. Marsh testified at trial that even if Chief Douglas had not discovered the troubling image, Marsh would have been required to report the matter to law enforcement pursuant to section 63–7–310 of the South Carolina Code of Laws.[1]

Subsequently, Cardwell was indicted on two counts of unlawful conduct toward a child and two counts of first-degree sexual exploitation of a minor. The Honorable Edward B. Cottingham called the case to trial on October 29, 2012. Sarah Cardwell was tried with her co-defendant, Michael Cardwell.

Pre-trial, counsel for Sarah Cardwell made several motions, including a motion to suppress both the video and laptop computer, arguing that the computer was unlawfully searched and both items unlawfully seized in violation of the Fourth Amendment. The circuit court denied the motion to suppress, ruling that there was no Fourth Amendment violation because Cardwell relinquished any expectation of privacy in her laptop when she turned it over to Marsh for repair. The court further opined that the questionable image fell within the plain view of Chief Douglas.

During trial, Cardwell twice renewed her motion to suppress both the video and the computer. After the State rested its case, Cardwell moved for a directed verdict, asserting insufficient evidence to sustain the State's charges against Cardwell. The circuit court denied these motions.

The jury subsequently found Cardwell guilty of two counts of unlawful conduct toward a child and two counts of first-degree sexual exploitation of a minor. After the verdict, Cardwell renewed her motion to suppress and moved for a new trial. The circuit court denied these motions.

---

1. Computer technicians, among other individuals, *"must report* in accordance with this section when in the person's professional capacity the person has received information which gives the person reason to believe that a child has been or may be abused or neglected...." S.C.Code Ann. § 63–7–310(A) (2010 & Supp.2014) (emphasis added).

Thereafter, the circuit court sentenced Cardwell to two years on each count of unlawful conduct toward a child, to run concurrently. As to the first count of first-degree sexual exploitation of a minor, the circuit court sentenced Cardwell to three years, to run consecutively to the previous indictments, and required her to register as a sex offender. As to the second count of first-degree sexual exploitation of a minor, the circuit court sentenced Cardwell to three years, to run concurrently. This appeal followed.

## ISSUE ON APPEAL

Did the circuit court err in refusing to suppress the laptop computer and video when, without a search warrant, law enforcement instructed a computer technician to locate the questionable image, play the video, copy the video, and then provide the video to another law enforcement officer, who also viewed it prior to obtaining a search warrant?

## STANDARD OF REVIEW

In criminal cases, this court sits to review errors of law only. *State v. Williams*, 386 S.C. 503, 509, 690 S.E.2d 62, 65 (2010) (citation omitted). "When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm if there is any evidence to support the ruling." *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011) (citation omitted). "The appellate court will reverse only when there is clear error." *State v. Missouri*, 361 S.C. 107, 111, 603 S.E.2d 594, 596 (2004) (citation omitted).

## LAW/ANALYSIS

### I. Reasonable Expectation of Privacy[2]

Cardwell argues that she had a reasonable expectation of privacy in the video evidence found on her laptop computer and that the circuit court erred in denying her motion to suppress the video. We disagree.

An appellate court must affirm a circuit court's Fourth Amendment suppression ruling if it is supported by any evidence. *State v. Taylor*, 401 S.C. 104, 108, 736 S.E.2d

---

**2.** We acknowledge that South Carolina has not specifically addressed whether a reasonable expectation of privacy exists in one's personal computer and its data when voluntarily produced to a third party.

663, 665 (2013) (citation omitted). "However, this deference does not bar this [c]ourt from conducting its own review of the record to determine whether the [circuit court's] decision is supported by the evidence." *State v. Tindall*, 388 S.C. 518, 521, 698 S.E.2d 203, 205 (2010) (citation omitted). The court will only reverse the circuit court's ruling on a motion to suppress when there is clear error. *Narciso v. State*, 397 S.C. 24, 32, 723 S.E.2d 369, 373 (2012) (citation omitted). This court will not reverse a circuit court's findings of fact merely because we would have reached a different conclusion. *State v. Moore*, 404 S.C. 634, 640, 746 S.E.2d 352, 355 (Ct.App.2013) (citation omitted).

 The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.[3] "As the text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, — U.S. ——, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (citation omitted). "The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Grady v. North Carolina*, — U.S. ——, 135 S.Ct. 1368, 1371, 191 L.Ed.2d 459 (2015).

 "To claim protection under the Fourth Amendment of the U.S. Constitution, defendants must show that they have a legitimate expectation of privacy in the place searched." *Missouri*, 361 S.C. at 112, 603 S.E.2d at 596. "A legitimate

---

3. Similarly, article I, section 10 of the South Carolina Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and unreasonable invasions of privacy shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, the person or thing to be seized, and the information to be obtained.

expectation of privacy is both subjective and objective in nature: the defendant must show (1) he had a subjective expectation of not being discovered, and (2) the expectation is one that society recognizes as reasonable." *Id.* (citation omitted); *see also California v. Greenwood,* 486 U.S. 35, 40–41, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (concluding "that society would not accept as reasonable respondents' claim to an expectation of privacy in trash left for collection in an area accessible to the public"); *Katz v. United States,* 389 U.S. 347, 359, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *State v. Robinson,* 396 S.C. 577, 583–84, 722 S.E.2d 820, 823 (Ct.App.2012) (stating a defendant must show his subjective expectation of privacy is one that society is prepared to accept as objectively reasonable).

 Generally, "[a] reasonable expectation of privacy exists in property being searched when the defendant has a relationship with the property or property owner." *Robinson,* 396 S.C. at 584, 722 S.E.2d at 823. Clearly, "[w]hat a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection." *Wright,* 391 S.C. at 444, 706 S.E.2d at 327–28 (quoting *Katz,* 389 U.S. at 351, 88 S.Ct. 507). However, the act of providing an information technology professional access to one's data for the sole purposes of preserving that data and restoring the computer's functionality does not constitute exposing the data to "the public." *Compare United States v. Barth,* 26 F.Supp.2d 929, 937 (W.D.Tex.1998) ("Defendant gave the hard drive to [a computer technician] for the *limited purpose* of repairing a problem unrelated to specific files and also expected that he would have the unit back the following morning to continue his business. Defendant, therefore, retained his reasonable expectation of privacy in the files when he gave the hard drive to [the technician]." (emphasis added)), *with Rideout v. Commonwealth,* 62 Va.App. 779, 753 S.E.2d 595, 600 (2014) (" 'Although as a general matter an individual has an objectively reasonable expectation of privacy in his personal computer, we fail to see how this expectation can survive [appellant's] decision to install and use *file-sharing software, thereby opening his computer to anyone else with the same freely available program.*' " (alteration in original) (emphasis added) (quoting *United States v. Stults,* 575 F.3d 834, 843 (8th Cir.2009))).

The question here is whether Cardwell, in turning her laptop computer over to a technician for repair, relinquished her reasonable expectation of privacy such that the warrantless searches and seizure of the computer and video file were reasonable within Fourth Amendment limits. *See, e.g., State v. Dupree*, 319 S.C. 454, 457, 462 S.E.2d 279, 281 (1995) (holding defendant did not have a continued reasonable expectation of privacy in crack cocaine discarded on the floor of a business open to the public). Whether a reasonable expectation of privacy exists in one's personal computer and its data when one voluntarily produces them to a third party has not been specifically addressed in South Carolina; however, other jurisdictions have considered this area of Fourth Amendment jurisprudence.

In *United States v. Simons*, 206 F.3d 392 (4th Cir.2000), the Fourth Circuit Court of Appeals held an employee who knew his internet activity would be scrutinized by his employer had no legitimate expectation of privacy in his internet activity. *Id.* at 398. More recently, the Court of Criminal Appeals of Alabama held a reasonable expectation of privacy does not exist in one's personal computer and its data when that data is contraband. *See Melton v. State*, 69 So.3d 916, 928–929 (Ala.Crim.App.2010) (explaining that even though computer technicians only viewed highly graphic file names indicating their contents were child pornography, law enforcement did not violate appellant's Fourth Amendment rights in opening the computer files as there is no constitutional protection in contraband).

Several jurisdictions have concluded that although a reasonable expectation of privacy generally exists in one's personal computer and accompanying data, an individual may relinquish this right. *See Stults*, 575 F.3d at 843 ("Although as a general matter an individual has an objectively reasonable expectation of privacy in his personal computer, we fail to see how this expectation can survive [appellant's] decision to install and use file-sharing software, thereby opening his computer to anyone else with the same freely available program." (citation omitted)); *Commonwealth v. Sodomsky*, 939 A.2d 363, 369 (Pa.Super.Ct.2007) (finding that when defendant submitted his computer to technicians for repair, he abandoned his privacy interest in the child pornography stored on his

hard drive); *Rogers v. State,* 113 S.W.3d 452, 458 (Tex.App. 2003) (upon directing the technician to back up his files, the defendant "no longer had a legitimate expectation of privacy in those files"); *Rideout,* 753 S.E.2d at 600 (by installing file sharing software on his computer, the appellant assumed the risk that other users, including law enforcement, could readily access those incriminating files that appellant shared).

Other jurisdictions have declined to find that an individual relinquishes his reasonable expectation of privacy when turning over equipment to a third party for limited purposes. *See, e.g., Barth,* 26 F.Supp.2d at 937 (holding defendant did not lose a reasonable expectation of privacy in computer files contained in a searched hard drive when he gave the technician, a confidential informant, a hard drive for the limited purpose of repairing a problem unrelated to files that were searched); *State v. Sachs,* 372 S.W.3d 56, 61 (Mo.Ct.App.2012) ("[U]sing a mouse and/or keyboard to shuffle between files that are not plainly visible on an active computer screen is just as much of a search as opening and looking through Appellant's filing cabinets or desk drawers." (citation omitted)).

In denying the motion to suppress both the video file and the laptop computer itself, the circuit court concluded that because Cardwell "voluntarily turned [her laptop computer] over to a repair technician who took it upon himself to comment on it" there was no Fourth Amendment violation. The circuit court explained, "[w]hen she gave it to the technician she had no concept [of] privacy."

 Cardwell argues that she has the same reasonable expectation of privacy in the data stored on her laptop that she would retain in any other closed container, file, document, or personal effect, and that she did not relinquish this expectation merely by turning the laptop over to Marsh for repair. She asserts that when Chief Douglas saw the still image of the video file, it only extinguished her privacy interest in the still image and that she retained a legitimate privacy interest in the video. We disagree that Cardwell had a legitimate privacy interest in the video file.

There is no question that a computer repair professional is required to report a client to law enforcement after discovering child pornography in a client's computer files. *See*

S.C.Code Ann. § 16–3–850 (2003) (requiring film processors, photo finishers, and computer technicians to report their discovery of images depicting minors "engaging in sexual conduct, sexual performance, or a sexually explicit posture"); § 63–7–310 (listing persons required to report suspected child abuse or neglect). Therefore, the client takes the risk that the computer professional will disclose to law enforcement officials any of her computer files containing child pornography. *Melton,* 69 So.3d at 928 ("[T]he question in this case is not whether society would generally find an expectation of privacy in computer files to be reasonable. Rather, the question is whether, at the time law enforcement officers were at the Best Buy store, an expectation of privacy *in files with explicit names that suggested that they contained child pornography* was an expectation that society is prepared to consider reasonable." (emphasis added)).

Based on our review of the record and the weight of authority from other jurisdictions, we hold the circuit court properly denied the motion to suppress the video file. While we disagree with the circuit court's statement that Cardwell "had no concept [of] privacy" whatsoever in the computer and its data when she voluntarily turned the computer over to the repair technician, we agree with the circuit court's decision to deny the motion to suppress as to the *particular* video file at issue.

The video file opened and viewed by Marsh and Chief Douglas contained images of a minor "engaging in sexual conduct, sexual performance, or a sexually explicit posture." [4] Once the sexually suggestive still image of the child in a bra appeared, no warrant was required to open and view *this* video file containing that very image. *See, e.g., United States v. Gardner,* 554 Fed.Appx. 165, 167 (4th Cir.2014) (citing *Arkansas v. Sanders,* 442 U.S. 753, 764–65 n. 13, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (plurality opinion), *overruled on other grounds by California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)) ("[S]ome containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because

---

4. *See* § 16–3–850.

their contents can be inferred from their outward appearance.").

Nonetheless, to conduct a full search of the remaining files on the computer, obtaining a warrant was necessary to protect Cardwell's legitimate expectation of privacy in those separate files. Indeed, obtaining the warrant would have been a relatively simple step. *See Riley*, 134 S.Ct. at 2493 ("Recent technological advances similar to those discussed here have, in addition, made the process of obtaining a warrant itself more efficient.").

## II. Plain View Doctrine

Cardwell argues that both Chief Douglas and Investigator Hanna improperly watched the video file without first obtaining a search warrant when no applicable Fourth Amendment exception allowed them to do so. We disagree.

Generally, a warrantless search is per se unreasonable and thus violates the Fourth Amendment's prohibition against unreasonable searches and seizures. *State v. Abdullah*, 357 S.C. 344, 350, 592 S.E.2d 344, 348 (Ct.App.2004) (citation omitted). "However, a warrantless search will withstand constitutional scrutiny where the search falls within one of a few specifically established and well delineated exceptions to the Fourth Amendment exclusionary rule." *Id.* (citation omitted). Exceptions to the search warrant requirement include the following: (1) search incident to a lawful arrest; (2) hot pursuit; (3) stop and frisk; (4) automobile exception; (5) the plain view doctrine; (6) consent; and (7) abandonment. *State v. Brown*, 401 S.C. 82, 89, 736 S.E.2d 263, 266 (2012) (citation omitted).

"[O]bjects falling within the plain view of a law enforcement officer who is rightfully in a position to view the objects are subject to seizure and may be introduced as evidence." *Wright*, 391 S.C. at 443, 706 S.E.2d at 327. In *Wright*, South Carolina joined the majority of jurisdictions in adopting *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), which discarded the inadvertence requirement of the plain view doctrine. *Id.* "Hence, the two elements needed to satisfy the plain view exception are: (1) the initial intrusion which afforded the authorities the plain

view was lawful and (2) the incriminating nature of the evidence was immediately apparent to the seizing authorities." *Id.*

After the verdict, Cardwell again renewed her motion to suppress the video and computer. In denying the motion, the circuit court explained,

> I denied that because the evidence showed that [the] computer was being shown in full view and the officer—police who happened to see it, just happened to stumble across it and saw [the image] in plain view. [There is] no search and seizure [issue] when an officer sees something in plain view that he and everybody else passing by could see. It was open to whoever opened the door.

Even if Cardwell had a reasonable expectation of privacy in the video file, there is no question that the still image of Minor 2 was in the plain view of Chief Douglas when he entered Marsh's office. *See Wright,* 391 S.C. at 443, 706 S.E.2d at 327 (recognizing the plain view doctrine as an exception to the warrant requirement). However, an officer's plain view of any still image on a computer screen is not what gives him the authority to open, and thereby search, the video file. *See State v. Sachs,* 372 S.W.3d at 61 ("When [the police detective] began clicking on icons on Appellant's computer screen to view different programs that were not openly visible on the computer screen, he was conducting a search."). In this case, Chief Douglas's authority to open the video file arose from the still image of Minor 2, which allowed an inference to be made about the illegality of the video's content. *See Blair v. United States,* 665 F.2d 500, 507 (4th Cir.1981) (stating that the contents of a container are considered to be in plain view if the container "proclaims its contents by its distinctive configuration or otherwise and thus allows by its outward appearance an inference to be made of its contents.").

 For purposes of Fourth Amendment analysis, we view the file as a "container" and the still image as either the container's label or as an element within the container's contents. *See Barth,* 26 F.Supp.2d at 936 ("Although the protection afforded to a person's computer files and hard drive is not well-defined, the Court finds that the Fourth Amendment protection of closed computer files and hard drives is

similar to the protection it affords a person's closed containers and closed personal effects." (citation omitted)); *United States v. Chan*, 830 F.Supp. 531, 534 (N.D.Cal.1993) (comparing data stored in a pager to the contents of a closed container). Opening the container, i.e., the video file, reveals the container's full content, the video itself. *Cf. Sachs*, 372 S.W.3d at 61 (comparing the use of a mouse or keyboard to shuffle between files not plainly visible on an active computer screen to opening and looking through filing cabinets or desk drawers).

 A container in plain view that is seized by law enforcement may be opened only once a warrant has been obtained or pursuant to one of the exceptions to the warrant requirement. *Horton*, 496 U.S. at 141 n. 11, 110 S.Ct. 2301.

Even when government agents may lawfully seize [a sealed] package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package. *Such a warrantless search could not be characterized as reasonable simply because, after the official invasion of privacy occurred, contraband is discovered.*

*United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (emphasis added) (footnotes omitted).

 Rather, "courts will allow a search of a container following its plain view seizure only where the contents of a seized container are a foregone conclusion." *United States v. Williams*, 41 F.3d 192, 197 (4th Cir.1994) (citation omitted).

[I]f the container is open and its contents exposed, its contents can be said to be in plain view. Second, if a container *proclaims its contents by its distinctive configuration or otherwise and thus allows by its outward appearance an inference to be made of its contents*, those contents are similarly considered to be in plain view. In either instance, an investigating authority need not obtain a warrant to search the container, the reasoning behind the exception being that a warrant under those circumstances would be superfluous.

*Blair*, 665 F.2d at 507 (emphasis added) (citation omitted).

 Here, the question is whether the "container," i.e., the video file, "allow[ed] by its outward appearance an inference to

be made of [the video's] content[ ]"[5] such that the plain view exception to the warrant requirement may serve as an independent ground for affirming the denial of Cardwell's motion to suppress. The "label" on the container, i.e., the still image, gave the appearance that the video file's content included a nude minor engaging in inappropriate sexual behavior. Therefore, the plain view exception to the warrant requirement supports the denial of the motion to suppress in this case.

### III. Inevitable Discovery Doctrine

■■■ As an additional sustaining ground, we find the inevitable discovery doctrine further supports the denial of the motion to suppress. *See Nix v. Williams*, 467 U.S. 431, 432, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ("If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[,] . . . then the deterrence rationale has so little basis that the evidence should be received."). Having seen the still image of Minor 2, both Chief Douglas and Investigator Hanna clearly had probable cause to obtain a search warrant to open the video file. Investigator Hanna testified that it was standard procedure to obtain a search warrant when he discovered images of child pornography, such as the still image of Minor 2, and that after viewing this specific image, he obtained a search warrant for Cardwell's computer. Therefore, the State showed that the video file's content inevitably would have been, and in fact was, ultimately discovered by lawful means.[6]

### CONCLUSION

We conclude the circuit court properly denied the motion to suppress the video file seized from Cardwell's laptop computer

---

5. *Blair*, 665 F.2d at 507.

6. Cardwell also challenges the circuit court's designation of the search as a "private search" despite law enforcement's significant involvement in directing it. Because we hold Cardwell had no legitimate expectation of privacy in the still image or the video file, we decline to reach this argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

because Cardwell had no reasonable expectation of privacy in the photograph of Minor 2. This photograph was in Chief Douglas's plain view and gave the appearance that the video file's content included a minor engaging in inappropriate sexual behavior. Thus, the circuit court properly denied the motion to suppress the video file pursuant to the plain view exception to the warrant requirement. Finally, the inevitable discovery doctrine further supports the circuit court's denial of the motion. Therefore, we hold the circuit court properly denied Cardwell's motion to suppress and motion for a directed verdict. Accordingly, the circuit court's ruling is

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.