IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 16 WAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered December 21, 2017 at |
| | : | No. 435 WDA 2017, affirming the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Butler County |
| | : | entered March 9, 2017, at No. CP-10- |
| JON ERIC SHAFFER, | : | CR-0000896-2016. |
| | : | |
| Appellant | : | ARGUED:  December 6, 2018 |

**OPINION**

**JUSTICE BAER**                                    **DECIDED:  JUNE 18, 2019**

This is an appeal from the judgment of the Superior Court, which affirmed the trial court's order denying a motion to suppress images of child pornography discovered by a computer repair shop employee after Jon Eric Shaffer ("Appellant") took his laptop to the commercial establishment for repair and consented to the replacement of the laptop's hard drive.  The Superior Court held that the trial court did not err in denying suppression because Appellant abandoned his reasonable expectation of privacy in the computer files under the facts presented.  We affirm the judgment of the Superior Court, albeit on different grounds.  *See Commonwealth v. Wholaver*, 177 A.3d 136, 145 (Pa. 2018) (holding that this Court may affirm a valid judgment or order for any reason appearing of record).

We hold that because the contraband images were discovered by a computer technician who was not acting as an agent of the government and because the police

officer's subsequent viewing of the contraband images did not exceed the scope of the computer technician's search, the private search doctrine applies and Appellant's constitutional privacy protections are not implicated.[1]

*I. Background*

The facts of this case, as revealed during the suppression hearing, are as follows. On November 25, 2015, Appellant delivered his laptop computer to CompuGig, a computer repair shop. To obtain repair services, Appellant was required to complete CompuGig's intake form, which queried "What problems are you experiencing?" and listed several alternatives. Commonwealth Exhibit 1. Appellant marked the boxes indicating "Spyware/virus" and "Can't get to Internet." *Id.* He also provided his computer login password. *Id.* Additionally, CompuGig's administrative log indicated that Appellant informed a CompuGig employee that his "son downloaded some things and now there are a lot of pop-ups. Internet has stopped working." Commonwealth Exhibit 2, at 1.

After conducting diagnostic testing, CompuGig technician Justin Eidenmiller believed that Appellant's computer had a failing hard drive. Consistent with CompuGig's policy of contacting the customer for approval if the service charges will exceed $160, an administrative employee called Appellant on December 4, 2015, and Appellant consented to the replacement of the hard drive.[2] In an effort to replace the hard drive, Eidenmiller

---

[1] As discussed in detail, *infra*, the High Court in *United States v. Jacobson*, 466 U.S. 109 (1984), held that a search conducted by private citizens is not protected by the Fourth Amendment. Any additional invasion of privacy by the government must be examined by considering the degree to which the government exceeded the private search. *Id.* at 115. This Court has acknowledged this rule of law in relation to both the federal and state constitutions. *See Commonwealth v. Harris*, 817 A.2d 1033, 1047 (Pa. 2002) (recognizing that "[t]he proscriptions of the Fourth Amendment and Article I, Section 8 do not apply to searches and seizures conducted by private individuals").

[2] The exact contents of this conversation are unknown as the administrative employee who called Appellant did not testify at the suppression hearing. The record establishes,

attempted to "take an image of the hard drive and put it on a new hard drive at the customer's request." N.T., 7/7/2016, at 6. While Eidenmiller obtained an image of the hard drive, he was unable to transfer that image successfully to a new hard drive.[3] *Id.*

The next day, after several unsuccessful attempts to transfer files from the hard drive, Eidenmiller continued his efforts to relocate the contents of the hard drive to the new hard drive by manually opening each individual folder and copying the contents. *Id.* at 7. During this process, Eidenmiller observed thumbnail images, *i.e.*, small images reflecting the identify of a computer file's contents, revealing what he believed to be sexually explicit photos of children. *Id.* at 7, 23-24. Notably, Eidenmiller had not been searching for that kind of information and had never been asked by law enforcement to keep watch for evidence of child pornography. *Id.* at 7, 13. Eidenmiller informed his boss of the images he discovered, and an administrative employee of CompuGig contacted the police. *Id.* at 7.

Later that afternoon, Officer Christopher Maloney of the Cranberry Township Police Department arrived at CompuGig. The store owners advised Officer Maloney that technicians had found explicit images of young girls on Appellant's laptop and took the officer to the room where Eidenmiller had been working on the computer. *Id.* at 28.

---

however, that Eidenmiller was told by CompuGig administration to continue working on the laptop because Appellant had consented to replacing the hard drive. Notes of Testimony ("N.T."), Suppression Hearing, 7/7/2016, at 17-18. Further, CompuGig's log indicated "Called customer to explain that we must do an OS Rebuild with data." Commonwealth Exhibit 2, at 2.

[3] CompuGig's administrative log indicated a second communication between Appellant and CompuGig when, on November 30, 2015, Appellant had called CompuGig, purportedly to check on the status of his repair, and was given a quote of $250.50 to cover "New 500 Gig HDD," "Reinstall image," and "PE." Commonwealth Exhibit 2, at 3. The log further indicated that Appellant was in a rush to have the repair completed as he used the laptop for his business. *Id.*

Officer Maloney asked to see the images that Eidenmiller had found. *Id.* at 28-29. Eidenmiller complied and showed Officer Maloney the child pornography images he had discovered, using the "exact route taken to find the images." *Id.* at 9, 30.[4] Germane to this appeal, after viewing the images that Eidenmiller displayed, Officer Maloney directed Eidenmiller to "shut down the file" and seized the laptop, external hard drive copy, and power cord. *Id.* at 29.

On December 11, 2015, Detective Matthew Irvin of the Cranberry Township Police Department went to Appellant's home and questioned him. Appellant admitted to having some images on his computer depicting children as young as eight years old in sexually explicit positions and identified the folders where the digital images were stored. Detective Irvin thereafter obtained a search warrant for the laptop and accompanying hardware on December 15, 2015.[5] *Id.* at 31. While the suppression record does not indicate when the search warrant was executed, there is no evidence suggesting that police conducted an independent search of the files on Appellant's laptop beyond what was observed at CompuGig prior to obtaining the warrant.

On December 18, 2015, Detective Irvin met with Appellant a second time and obtained a written inculpatory statement regarding the illegal images. The following month, on January 21, 2016, a criminal complaint was filed against Appellant charging him with sexual abuse of children (possession of child pornography), 18 Pa.C.S. § 6312(d), for possessing seventy-two digital images, which depicted a child under eighteen years of age engaging in a prohibited sexual act or in the simulation of such act. The complaint also charged Appellant with criminal use of a communication facility (laptop

---

[4] The record does not disclose the precise number of images that Eidenmiller found and displayed to Officer Maloney.

[5] Detective Irvin did not testify at the suppression hearing; rather, Officer Maloney testified that Detective Irwin questioned Appellant and subsequently obtained a search warrant.

computer), 18 Pa.C.S. § 7512(a), for utilizing the internet to commit, cause or facilitate the commission of the felony of sexual abuse of children.

On May 27, 2016, Appellant filed a pretrial omnibus motion to suppress the contraband images discovered on the hard drive of his laptop computer. Acknowledging that a CompuGig employee had summoned Officer Maloney to the establishment after discovering the illegal images, in his suppression motion, Appellant asserted that an illegal search occurred at the moment Officer Maloney directed the CompuGig employee to open Appellant's computer files and display the suspected contraband images that Eidenmiller had discovered, after which Officer Maloney viewed the images and seized the laptop and the copy of the external hard drive.[6] Defendant's Omnibus Pretrial Motion, at ¶ 4, 8. Appellant maintained that Officer Maloney's discovery of the evidence was neither inadvertent nor involved exigent circumstances because the CompuGig employee had informed the officer that the illegal images were on the laptop and that the laptop had been secured in the backroom of the CompuGig facility. Under these circumstances, Appellant submitted, Officer Maloney was required to obtain a warrant before conducting a search of his computer files.

Appellant further contended in his suppression motion that this police conduct constituted a warrantless search of his laptop in violation of his reasonable expectation of privacy, as well as a trespass upon his property in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. *Id.* at ¶ 8.[7] Relevant here, Appellant argued that he did not abandon

---

[6] Appellant did not challenge the chain of custody of his laptop in his suppression motion or suggest that police searched the laptop after seizing it at CompuGig, but before obtaining a warrant.

[7] Appellant did not argue in his suppression motion that Article I, Section 8 offers greater protection than the Fourth Amendment under the circumstances presented.

his expectation of privacy in the files stored on his laptop when he took the computer to CompuGig for repair. He further argued that the incriminating statements he made to police after this illegal search and seizure were the fruit of the unlawful police conduct. *Id.* at ¶ 9. Accordingly, Appellant requested that the trial court suppress the physical evidence seized and all the fruits thereof.

In opposing Appellant's suppression motion, the Commonwealth did not specifically invoke the private search doctrine. Instead, the Commonwealth took the position that once Appellant gave his laptop to CompuGig for repairs, he abandoned his expectation of privacy in the computer files stored on the laptop. In support of this position, the Commonwealth relied upon the Superior Court's decision in *Commonwealth v. Sodomsky*, 939 A.2d 363 (Pa. Super. 2007). As the parties' arguments and the lower courts' decisions revolve around the *Sodomsky* decision, we shall examine that case.

In *Sodomsky,* the defendant went to a Circuit City store and requested the installation of an optical drive and DVD burner onto his desktop computer. The defendant was informed that as part of the installation process, the installer would have to make sure that the DVD burner worked. The defendant did not inquire as to how operability of the DVD burner would be determined. After the software was installed, a computer technician performed a general search of the defendant's computer files for a video to test the new DVD drive. During this general search, the technician observed titles of videos which appeared to be pornographic in nature because their titles included masculine first names, ages of either thirteen or fourteen, and sexual acts. The technician clicked on the first video title that appeared questionable, and the video contained the lower torso of an unclothed male and a hand approaching the male's penis. The technician immediately stopped the video and contacted his manager, who summoned the police.

The police arrived at the Circuit City store and viewed the same video clip discovered by the technician. When the defendant arrived shortly thereafter to retrieve his computer, the police informed him that his computer was being seized because police suspected that it contained child pornography. The defendant responded that he knew what they had found and that "his life was over." *Id.* at 366. Police seized the computer. After obtaining a warrant, the police searched the computer and discovered child pornography. The defendant filed a motion to suppress the illegal images, which the trial court granted. The trial court reasoned that the defendant retained a privacy interest in the computer files as he did not expect the computer's contents to be published to anyone other than Circuit City employees who were performing the requested installation.

On appeal to the Superior Court, the issue was whether the defendant's "expectation of privacy in the videos on the computer that he relinquished to Circuit City employees for repairs was reasonable or whether he knowingly exposed the computer's video files to the public such that he voluntarily abandoned his privacy interest in them." *Id.* at 367. The *Sodomsky* court examined the theory of abandonment in Pennsylvania, acknowledging that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* at 367 (quoting *Katz v. United States*, 389 U.S. 347, 351-52 (1967)).

Emphasizing that abandonment is a question of intent that is dependent upon the facts and circumstances presented, the *Sodomsky* court concluded that the defendant had no reasonable expectation of privacy in his illegal computer files. First, the court observed that the defendant requested the installation of a DVD drive, that Circuit City employees informed him that the drive's operability would be tested, and that the defendant did not inquire as to the manner of testing or restrict the employees' access to

his computer files. *Sodomsky*, 939 A.2d at 368. The court concluded that the defendant "should have been aware that he faced a risk of exposing the contents of his illegal video files." *Id.*

Although not characterizing the initial search as a private one, the *Sodomsky* court found it critical that when the child pornography was discovered, the computer technicians were testing the "drive's operability in a commercially-accepted manner" and were not searching for contraband. *Id.* The court further emphasized the voluntary nature of the defendant's actions in leaving his computer at the store without deleting the child pornography videos or altering the videos' illicit titles. *Id.* at 369.

The Superior Court distinguished the *Sodomsky* case from *Commonwealth v. DeJohn*, 403 A.2d 1283 (Pa. 1979), where this Court held that a bank could not submit a customer's bank records to the police absent a search warrant because one's disclosure of financial records to a bank was not entirely volitional as one cannot participate in the economic life of contemporary society without a bank account. To the contrary, the court held that the defendant in *Sodomsky* was not compelled to take his computer to Circuit City for repair and could have elected to leave the store with the computer after being informed that the DVD burner's operability would be examined, instead of risking discovery of the illegal images. *Sodomsky,* 939 A.2d at 369. The court concluded that because the defendant abandoned his privacy interest in the child pornography videos on his computer, he could not object to the subsequent viewing of the video list and file by police. *Id.*

Finally, the *Sodomsky* court rejected the defendant's contention that the seizure of the computer was improper absent a warrant. The court held that the plain view exception to the warrant requirement applied because the police had been invited to the repair center in Circuit City, the videos were not obscured and could be readily seen from that

location, the incriminating nature of the video files was immediately apparent based on the graphic titles assigned to the videos, and the police had the lawful right to access the videos because the defendant had abandoned any reasonable expectation of privacy in them.[8] *Id.* at 370.

Returning to the instant case, at the suppression hearing on July 7, 2016, two witnesses, Eidenmiller and Officer Maloney, testified to the aforementioned facts. The parties' arguments focused exclusively upon the applicability of the *Sodomsky* decision. Following the hearing, the trial court denied Appellant's suppression motion, finding that the present facts were similar enough to render *Sodomsky* controlling. Trial Court Opinion, 10/3/2016, at 7. While the trial court did not agree with the Commonwealth that under *Sodomsky* Appellant abandoned his expectation of privacy in his computer files as soon as he delivered the laptop for repair, the court held that Appellant abandoned his expectation of privacy when he requested repairs on his computer related to complaints of a virus and an inability to use the Internet and consented to the replacement of his hard drive.

The trial court found that the instant circumstances would "obviously lead a person to conclude that CompuGig was likely to perform work related to the hard drive and the files contained on it [and that Appellant] was or should have been aware that he faced a risk of exposing the files contained thereon, as was the case in *Sodomsky*." *Id.* at 9. Also similar to *Sodomsky*, the trial court held that when the images of child pornography were discovered, the CompuGig technician was not conducting a search for illicit items, but was attempting to transfer the files from Appellant's hard drive to a new drive. *Id.* The

---

[8] Judge Colville filed a concurring opinion in which he opined that he would not engage in a plain view analysis as the defendant's challenge fails because he lacked a reasonable expectation of privacy in the videos stored on his computer after he delivered the computer to Circuit City.

court further opined that Appellant's actions in delivering his laptop to CompuGig for repairs and consenting to the replacement of the laptop's hard drive were voluntary and were not required for Appellant to function in society, distinguishing the case from this Court's decision in *DeJohn*. *Id.* at 9-10.

Concluding that Appellant abandoned his privacy interest in the files at issue, the trial court found that he could not object to the subsequent viewing of the files by police as Officer Maloney properly seized the laptop under the plain view exception to the warrant requirement. *Id.* at 10. The court reasoned that Officer Maloney was lawfully at the CompuGig store at the invitation of the store's owners, the computer and files were not obscured and could be plainly seen from that location, the incriminating nature of the files was readily apparent, and Officer Maloney had a lawful right of access to the computer files because Appellant had abandoned his privacy interest in them. *Id.* at 10.

The trial court further rejected Appellant's challenge to the search and seizure of his computer based upon a trespass analysis, concluding that Eidenmiller was engaged in conduct permitted by Appellant when the files were discovered; thus, he was not trespassing on Appellant's effects. *Id.* at 10. Relevant here, the trial court emphasized that Officer Maloney never expanded upon Eidenmiller's actions, but merely viewed the images that Eidenmiller presented to him. *Id.* at 11.

On November 10, 2016, the trial court, sitting as finder of fact, found Appellant guilty of both charges (possession of child pornography and criminal use of a communication facility) and subsequently sentenced him to an aggregate six to twelve months of incarceration, followed by 156 months of probation. Appellant appealed his judgment of sentence to the Superior Court, raising the single issue of whether the trial court erred in failing to suppress evidence from the warrantless search and seizure of his laptop. As it did before the trial court, the Commonwealth again contended that the

*Sodomsky* decision was controlling, while Appellant maintained that *Sodomsky* was distinguishable or, in the alternative, should be overturned.

The Superior Court affirmed Appellant's judgment of sentence in a published decision. *Commonwealth v. Shaffer*, 177 A.3d 241 (Pa. Super. 2017). Initially, the court declined Appellant's invitation to overrule *Sodomsky,* finding that such action should be taken by either an *en banc* panel of the Superior Court or this Court. *Id.* at 246. Further, the Superior Court was unpersuaded by Appellant's attempt to distinguish *Sodomsky* on the ground that it was unforeseeable that the technician replacing his hard drive would have been unable to take an image of the entire hard drive, causing him to copy Appellant's files manually from the old hard drive to the new one, thereby exposing his illicit photographs.

The court emphasized that in *Sodomsky*, the defendant made a similar contention, alleging that he was unaware that the technician intended to run a test on the new DVD drive using a video from the defendant's hard drive. In both cases, the Superior Court reasoned, the defendants did not inquire as to how the repair procedure would be executed or restrict in any way the computer technician's access to the illegal files. *Id.* The Superior Court further noted that in both cases the computer technicians were completing repairs in a commercially-accepted manner and were not conducting a search for illicit items when they inadvertently discovered the child pornography. *Id.* at 247. The court concluded that any factual distinctions between the two cases favored the denial of suppression in the instant case as Appellant was informed that CompuGig needed to transfer all of his files and the illicit images appeared obviously in thumbnail images when Eidenmiller opened a folder on the hard drive. *Id.* Accordingly, the Superior Court concluded that, like the defendant in *Sodomsky*, Appellant abandoned his expectation of

privacy in the contents of his computer files; thus, the trial court did not err in denying his motion to suppress.

As noted, this Court granted allowance of appeal to determine whether the Superior Court erred in determining that Appellant abandoned his expectation of privacy in child pornography files stored on his computer under the facts presented.

## II. The Parties' Arguments

Appellant contends that the trial court erred in denying suppression of the physical evidence obtained from his laptop and his resulting confessions because such evidence was obtained without a warrant or consent and in the absence of exigent circumstances, thereby violating his right against unreasonable searches and seizures under both Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution.[9],[10]  Appellant acknowledges that for these constitutional protections to apply, the citizen must first establish a subjective expectation of privacy in the area searched or the effects seized and must demonstrate that the expectation is one that society is prepared to recognize as reasonable.  Brief for Appellant, at 9.  He posits,

---

[9] The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.

Article I, Section 8 of the Pennsylvania Constitution provides that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.  PA. CONST. art. I, § 8.

[10] Appellant does not contend in his brief to this Court that Article I, Section 8 of the Pennsylvania Constitution offers any greater protection than the Fourth Amendment. Accordingly, we assume for purposes of argument that both provisions offer the same protection under the circumstances presented.

however, that one cannot abandon his reasonable expectation of privacy unless he does so with intent or where it is reasonably foreseeable to him that his actions will relinquish his privacy to others.

Appellant maintains that he did not intend to relinquish his reasonable expectation of privacy in his computer files when he took his laptop to CompuGig for enumerated repairs. Further, he submits, it was not reasonably foreseeable that his private computer files would be accessed by CompuGig employees. Appellant explains that only a "convoluted chain of events" prompted discovery of the illegal images as Eidenmiller determined that his laptop's hard drive was failing, attempted to copy the entire hard drive to a new drive using particular software, and was ultimately forced to copy folders onto the new hard drive manually. Brief for Appellant, at 10. He asserts that it was not until Eidenmiller was unable to copy some of the folders that the individual files were opened for copying purposes, thereby revealing the contraband images.

Appellant contends that if this scenario is interpreted as being reasonably foreseeable, he cannot imagine an instance where one would retain a reasonable expectation of privacy in his computer files when the computer is taken to a commercial establishment for repair. Emphasizing one's general inability to repair a broken computer, Appellant likens his case to *Commonwealth v. DeJohn, supra*, where this Court held that one does not lose his reasonable expectation of privacy when he discloses financial records to his bank because disclosure of these records is not entirely volitional, considering that one cannot participate in the economic life of contemporary society without a bank account. He asserts that the same is true for personal computers.

Regarding the application of the Superior Court's decision in *Sodomsky*, Appellant neither expressly requests that we overrule that decision nor distinguishes that case from the facts presented. He offers only his opinion that the *Sodomsky* finding of an

abandoned expectation of privacy was based, in part, on the defendant's failure to ask the right questions at the computer repair shop. In Appellant's view, "the vast majority of people in our society do not understand computers enough to ask the right questions." Brief for Appellant, at 14. He maintains that other jurisdictions have decided cases in a manner consistent with his position. *See U.S. v. Barth*, 26 F.Supp.2d 929 (W.D. TX. 1998) (suppressing evidence found on computer given to a technician for repair on grounds that the defendant retained his expectation of privacy where he gave his computer for the limited purpose of repairing a problem unrelated to the contraband files recovered and where the police search of the computer exceeded the scope of the search conducted by the technician); *State v. Cardwell*, 778 S.E.2d 483 (S.C. Ct. of App. 2015) (disagreeing with the proposition that one has no concept of privacy in a computer and data contained therein when one voluntarily gave the computer to a technician for repair).

Further, while acknowledging that the case is not dispositive, Appellant cites the United States Supreme Court's decision in *Riley v. California*, 134 S.Ct. 2473 (2014), which held that when police lawfully seize a cell phone in a search incident to arrest, they must obtain a search warrant prior to accessing the contents of the cell phone because cell phones contain an abundance of private information and, accordingly, deserve more stringent privacy safeguards. Appellant suggests that because a laptop may contain even more private material than a cell phone, this Court should follow the trend in the law to respect a citizen's privacy in personal data in the computer age.

In response, the Commonwealth first takes the broad position that citizens relinquish their expectation of privacy in closed computer files once they take the computer to a commercial establishment for repair. Based on the theory of abandonment espoused in *Sodomsky*, it submits that when one takes a computer to a commercial repair shop, the individual voluntarily relinquishes control over the computer's contents to the

technician who is a member of the public. Regardless of what type of repairs are necessary, the Commonwealth asserts, the individual has complete control over what he exposes as he can delete private files prior to the repair or limit the technician's access to folders or files on the computer. When the individual does not choose to protect his privacy interest and instead simply hands over his computer to a commercial establishment, the Commonwealth asserts that there is an abandonment of any reasonable expectation of privacy.

The Commonwealth refutes Appellant's argument that private files on a laptop are analogous to financial records disclosed to a bank. Unlike in *DeJohn*, where this Court held that the relinquishment of bank records was not voluntary because one needs a bank account to function in today's society, the Commonwealth reiterates that one retains control over what one exposes to a computer repair shop. *See* Brief for Appellee, at 10 (citing *Sodomsky*, 939 A.2d at 369 (holding that "[c]ontrary to the circumstances in *DeJohn*, *supra*, where a person has little choice but to retain bank accounts in order to function in society, Appellee was not compelled to take this particular computer containing child pornography to the store in the first instance, nor was he forced to leave it there after being informed that the burner's operability would be checked")).

The Commonwealth further distinguishes the High Court's decision in *Riley*, *supra*, which held that police cannot search the contents of a cell phone incident to an arrest without a warrant. It argues that *Riley* has no application to the instant appeal, which is not focused upon the immense amount of information a computer can store but, rather, on the abandonment of a reasonable expectation of privacy by knowingly exposing personal data to the public.

In the event this Court rejects its broad proposition that one abandons his expectation of privacy each time he takes a computer for repair, the Commonwealth

alternatively argues that Appellant abandoned his expectation of privacy under the particular facts presented. It contends that Appellant knew that CompuGig technicians would access his files as he disclosed his computer password to the commercial establishment, authorized it to run diagnostics, was informed that CompuGig needed to do an "OS rebuild with data," and consented to the replacement of his hard drive. The Commonwealth points out that Appellant was not obligated to have the repairs completed, and was free to leave or retrieve his computer at any time. It asserts that there is no evidence that Appellant attempted to keep the files at issue private, considering that he did not remove the contraband files from his computer, did not indicate that there was valuable or private data on the computer, and did not restrict CompuGig's access to the computer in any way.

Thus, the Commonwealth asserts, the record demonstrates that Appellant knowingly and voluntarily granted CompuGig access to his computer files, thereby exposing them to the public and extinguishing his reasonable expectation of privacy. The Commonwealth maintains that other jurisdictions have reached similar results. Brief for Appellee, at 19-21 (citing *State v. Horton*, 962 So. 2d 469 (La. App. 2d Cir. 2007) (holding that the defendant relinquished his reasonable expectation of privacy when he brought his computer to a commercial establishment to have a hard drive installed and his illicit images of child pornography were in a default file, which automatically opened and displayed the unlawful photos to the computer technician); *Rogers v. State*, 113 S.W.3d. 452 (Tex. App. San Antonio 2003) (holding that although the defendant had a privacy interest in his computer hard drive, he did not have complete dominion or control over the files because he had voluntarily relinquished control to the computer repair store and did not take normal precautions to protect his privacy when he expressly directed the computer repair technician to back up the jpeg files)).

Finally, the Commonwealth discusses the private search doctrine. *See* Brief for Appellee at 17 (citing *United States v. Jacobsen*, 466 U.S. 109 (1984), for the proposition that under the private search doctrine, if an individual conducts a search of another's belongings, the police may replicate that search because the reasonable expectation of privacy has been extinguished with respect to that object or container). Acknowledging that police are limited by, and may not exceed, the scope of the private search, the Commonwealth contends that the record here is clear that the police did not exceed the private search. It submits that when Eidenmiller opened the folder containing the illicit photos, they were displayed as larger thumbnails and when Officer Maloney asked to see the images found, he viewed the identical thumbnails that the private search had already revealed.

The Commonwealth finds the Sixth Circuit Court of Appeals' decision in *United States v. Lichtenberger*, 786 F.3d 478 (6th Cir. 2015), instructive as it addresses application of the private search doctrine in a case involving the search of digital information. In *Lichtenberger*, the defendant's girlfriend hacked into his computer using a password recovery program, discovered a folder containing child pornography, and informed police of her discovery. The Sixth Circuit Court of Appeals held that there was no Fourth Amendment violation when police viewed the images that the private searcher had viewed because the reasonable expectation of privacy was already frustrated with respect to those images. However, the court held that a subsequent search by police was unlawful because the police exceeded the scope of the prior private search, thereby violating the Fourth Amendment. The Commonwealth reiterates that because the police in no way exceeded the scope of Eidenmiller's private search here, there is no Fourth Amendment violation. According to the Commonwealth, no federal circuit court has found that the private search doctrine is inapplicable to digital containers. Brief of Appellee, at

19 (citing *U.S. v. Tosti*, 733 F.3d 816 (9th Cir. 2013); *Rann v. Atchison*, 689 F.3d 832 (7th Cir. 2012); and *U.S. v. Runyan*, 275 F.3d 449 (5th Cir. 2001)).

In his reply brief, Appellant asserts that the Commonwealth relies upon the private search doctrine in its brief to this Court for the first time in this litigation. He contends that the Commonwealth cites no Pennsylvania case law in support of this doctrine because there is none. Appellant urges this Court not to adopt the private search doctrine as a part of Pennsylvania jurisprudence because there is no record made in the instant case regarding the extent of the private search as compared to the scope of the subsequent police search. Finally, he maintains that the private search doctrine offers the Commonwealth no relief from the warrantless seizure of Appellant's laptop.

### III. Analysis

### A. Standard/Scope of Review

An appellate court's standard of reviewing the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017). Thus, our review of questions of law is *de novo*. *Id.* Our scope of review is to consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole. *Id.*

### B. Private Search Doctrine

We examine first the Commonwealth's assertion regarding applicability of the private search doctrine because if we determine that the doctrine applies, that conclusion would be dispositive of the appeal.[11] The doctrine is illustrated in the United States

---

[11] Any determination of whether Appellant retained a reasonable expectation of privacy in his laptop when he consented to the replacement of his hard drive presumes that it was the government who invaded his privacy by conducting the search. As explained *infra*,

Supreme Court's seminal decision in *United States v. Jacobson*, *supra*. There, employees of a private freight carrier opened a cardboard package that had been damaged by a forklift and found a closed ten-inch tube wrapped in newspaper. Consistent with company policy regarding insurance claims, the employees cut open the tube to examine its contents and found several plastic bags containing a white powder. By the time a Drug Enforcement Administration ("DEA") agent was summoned, the employees had returned the plastic bags to the tube and replaced the tube in the box. Upon arrival, the DEA agent removed the tube from the box, removed the plastic bags from the tube, field tested the powder to determine if it was cocaine, and concluded that it was. Additional agents subsequently arrived, conducted a second field test, and obtained a warrant to search the mailing address listed on the package.

After being indicted on drug charges, the defendants filed a motion to suppress the evidence recovered from the package, contending that the warrant was the product of an illegal search and seizure. The district court denied suppression. The Court of Appeals reversed, holding that a warrant was required because the testing of the powder constituted a significant expansion of the earlier private search.

The High Court reversed, holding that "the federal agents did not infringe any constitutionally protected privacy interest that had not already been frustrated as a result of private conduct." *Jacobsen*, 466 U.S. at 126. The Court explained that "[t]o the extent that a protected possessory interest was infringed, the infringement was *de minimis* and constitutionally reasonable." *Id.* Acknowledging that the Fourth Amendment protects against both unreasonable searches and seizures, the Court defined a "search" as occurring "when an expectation of privacy that society is prepared to consider reasonable

---

once it is determined that the search was conducted absent state action, the inquiry becomes whether the police exceeded the scope of the private search.

is infringed." *Id.* at 113. It defined a "seizure" of property as occurring "when there is some meaningful interference with an individual's possessory interests in that property." *Id.* The Court proceeded to explain that this constitutional protection proscribed only governmental action and was wholly inapplicable "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." *Id.* (citation omitted).

Categorizing the package as an "effect" in which an individual has a reasonable expectation of privacy, the Court observed that a warrantless search of the package would be presumptively unreasonable. *Id.* at 114. However, the Court opined, "the fact that agents of the private carrier independently opened the package and made an examination that might have been impermissible for a government agent cannot render otherwise reasonable official conduct unreasonable." *Id.* at 114-15. Accordingly, because the initial invasion of the package was accomplished by private action, the Court held that the Fourth Amendment was not violated, regardless of whether the private action was accidental, deliberate, reasonable, or unreasonable. *Id.* at 115.

Significantly, the High Court explained that the additional invasions of privacy by the government agent "must be tested by the degree to which they exceeded the scope of the private search." *Id.* (citing *Walter v. United States*, 447 U.S. 649 (1980)). The Court observed that "[t]he Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." *Id.* at 117. The High Court construed the governmental actions as twofold, first removing the contraband from its packaging and viewing it, and, second, conducting a chemical test of the powder. *Id.* at 118.

Regarding the government agent's reopening of the package after having been told by the employees that it contained a white powder, the Court emphasized that "there was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell him anything more than he already had been told." *Id.* at 119. As the government could use the employees' testimony regarding the contents of the package, the Court found that "it hardly infringed [the defendants'] privacy for the agents to re-examine the contents of the open package by brushing aside a crumpled newspaper and picking up the tube." *Id.* The Court observed that this governmental action did not further infringe upon the defendants' privacy, but rather merely avoided the risk of a flaw in the employees' recollection. *Id.* The High Court held that the defendants "could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents." *Id.* It concluded that the DEA agent's observation of what a private party had voluntarily made available for his inspection did not violate the Fourth Amendment. *Id.*

In the same vein, the Court ruled that the removal of the plastic bags from the tube and the visual inspection of the contents provided the agent with no more information than what had been discovered during the private search. Thus, the High Court opined, the agent's actions "infringed no legitimate expectation of privacy and hence was not a 'search' within the meaning of the Fourth Amendment." *Id.* at 120. Notably, the Court explained that while the agent's assertion of dominion and control over the package and its contents constituted a "seizure," the seizure was not unreasonable because the privacy interest in the package had already been compromised, as it had been opened and remained unsealed and because the agent had been specifically invited to examine

the package's contents. *Id.* at 120-21. The Court ruled that "since it was apparent that the tube and plastic bags contained contraband and little else, this warrantless seizure was reasonable, for it is well settled that it is constitutionally reasonable for law enforcement officials to seize 'effects' that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband." *Id.* at 121-22.

The High Court proceeded to examine whether the agent's additional intrusion, occasioned by the field test of the white powder, exceeded the scope of the private search. The Court answered this inquiry in the negative, finding that the chemical test that merely disclosed whether a substance is cocaine did not compromise any legitimate interest in privacy as one cannot legitimately have a privacy interest in cocaine, an illegal substance. *Id.* at 123. The Court concluded that because only a trace amount of the material was involved and because the property had been lawfully detained, "the 'seizure' could, at most, have only a *de minimis* impact on any protected property interest." *Id.* at 125. Because the safeguards of a warrant would only minimally advance Fourth Amendment interests, the court concluded that the warrantless "seizure" was reasonable. *Id.*

Contrary to Appellant's assertion in his reply brief, there is ample support for the private search doctrine in Pennsylvania jurisprudence. This Court in *Commonwealth v. Harris*, 817 A.2d 1033, 1047 (Pa. 2002), acknowledged that "[t]he proscriptions of the Fourth Amendment and Article I, § 8, do not apply to searches and seizures conducted by private individuals." We explained that the admission of incriminating letters that had been taken by a private individual and turned over to police did not implicate the Fourth Amendment or Article I, Section 8, because those provisions concern only governmental searches and seizures. *Id.* at 1046. In addition to citing the federal authority discussed

*supra*, we relied upon this Court's previous decision in *Commonwealth v. Corley,* 491 A.2d 829 (Pa. 1985), which held that the exclusionary rule did not apply to a citizen's arrest because there was no state action.  We explained that "[a]t the core of the reasoning underlying this refusal to extend application of the exclusionary rule to private searches is the concept of 'state action,' the understanding that the Fourth Amendment operates only in the context of the relationship between the citizen and the state." *Harris*, 817 A.2d at 1047 (quoting *Corley*, 491 A.2d at 831).

In any event, while Appellant has claimed throughout this litigation that the unlawful search and seizure of his laptop violated both the Fourth Amendment and Article I, Section 8, he has not presented any claim that Article I, Section 8 provides greater protection to abandoned property or that our state counterpart to the Fourth Amendment should extend constitutional privacy protections to private searches under the circumstances here present.  Thus, we analyze the case under Fourth Amendment jurisprudence.

### C. Application of Private Search Doctrine

Initially, we readily acknowledge that the Commonwealth did not assert the private search doctrine during the suppression hearing and that the parties' arguments instead focused upon whether Appellant had a reasonable expectation of privacy in his laptop when he took the computer to CompuGig for repairs and consented to the replacement of his hard drive.  However, we should not ignore governing Fourth Amendment jurisprudence by treating a private search, which is not entitled to constitutional protection, as though it were conducted by a government agent.  Moreover, throughout this litigation, the Commonwealth was the nonmoving party or appellee and had no obligation to preserve the issue of whether the private search doctrine applied.  *See Rufo v. Bd. of License & Inspection Review*, 192 A.3d 1113, 1123 (Pa. 2018) (observing that appellees

have no obligation to preserve issues). As demonstrated *infra*, we further disagree with Appellant that the record is inconclusive as to whether the requisites of the doctrine are satisfied.

Pursuant to *Jacobson*, our inquiry is two-fold: (1) whether the facts presented establish that a private search was conducted; and, if so, (2) whether the police actions exceeded the scope of the private search. *Jacobsen,* 466 U.S. at 115. Regarding the private nature of the search, we reiterate that Appellant took his laptop to CompuGig for repairs, disclosed his password, and authorized the replacement of his hard drive. While transferring files from the old hard drive to the new one, Eidenmiller discovered the thumbnail images of child pornography. Appellant does not contend that Eidenmiller was in any way acting in concert with law enforcement when this occurred. In fact, Eidenmiller expressly testified at the suppression hearing that he had not been searching for illicit information and had never been asked by law enforcement to keep watch for evidence of child pornography. N.T., 7/7/2016, at 7, 13.

After discovering the contraband images, Eidenmiller then reported the child pornography to his supervisor, and a CompuGig administrative employee contacted the police. *Id.* at 7. In response, Officer Maloney proceeded to the CompuGig facility. The store owners then reiterated that Eidenmiller had found explicit images of young girls on Appellant's laptop and led Officer Maloney back to the computer repair room where Eidenmiller was located. *Id.* at 28. Officer Maloney then asked Eidenmiller to show him what he had found. The relevant testimony in this regard provides:

| PROSECUTOR: | What happened when you got to where the computer was? |
|---|---|
| OFFICER MALONEY: | I spoke with the technician that found the items on the computer. |
| PROSECUTOR: | Mr. Eidenmiller? |

OFFICER MALONEY:    Yes, Ma'am.

PROSECUTOR:    And what was that conversation?

OFFICER MALONEY:    I asked him what kind of images that he saw, what was on the computer, and I also asked him if he could show me what the images were.

PROSECUTOR:    Did he do so?

OFFICER MALONEY:    Yes.

PROSECUTOR:    Did you view those images?

OFFICER MALONEY:    I did, yes.

PROSECUTOR:    And what were the images that you viewed?

OFFICER MALONEY:    The images that I saw were of young females under the age of eighteen, some of them were under the age of I would say thirteen and sexually explicit positions.

PROSECUTOR:    And once you viewed those what did you do?

OFFICER MALONEY:    I had them shut down the file, and I asked him if there was anything else that needed to be done or anything else that he has and I seized everything.

N.T., 7/7/2016, at 29.[12]

On cross-examination, defense counsel asked Officer Maloney whether Eidenmiller had to "do some clicking around to access the file." *Id.* at 30. Officer Maloney responded in the affirmative. *Id.* Defense counsel then inquired as to whether Eidenmiller opened the file at Officer Maloney's request. *Id.* Officer Maloney replied, "Yes, sir, he showed me the exact route taken to find the images." *Id.*

---

[12] Officer Maloney explained that he seized Appellant's laptop, an external hard drive containing a copy of Appellant's hard drive, and the power cord. *Id.* at 31. Eidenmiller corroborated Officer Maloney's testimony regarding the conversation that occurred between the two men. *See id.* at 26 (responding in the affirmative when asked whether Officer Maloney asked Eidenmiller to display what he had found).

It has been Appellant's contention throughout these proceedings that when Officer Maloney requested to see the images that Eidenmiller had found while trying to repair Appellant's laptop, an illegal governmental search ensued in violation of his constitutional rights to privacy. Consistent with the High Court's decision in *Jacobsen*, we find this position unpersuasive as it ignores the context of Officer Maloney's request and the fact that CompuGig invited the officer into the establishment to view the very contraband that Officer Maloney asked Eidenmiller to disclose. *See Jacobsen*, 466 U.S. at 119 (explaining that because the government could use the employees' testimony regarding the contents of the package, it "hardly infringed upon [the defendants'] privacy for the agents to re-examine the contents of the open package by brushing aside a crumpled newspaper and picking up the tube;" thus, this governmental action did not further infringe upon the defendants' privacy, but rather merely avoided the risk of a flaw in the employees' recollection). The *Jacobsen* Court explained that the defendants "could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents." *Id.* at 119.

Like the High Court in *Jacobsen*, we conclude that Officer Maloney's observation of what Eidenmiller voluntarily made known to him for his inspection after Officer Maloney was invited to the premises for the express purpose of viewing the contraband did not violate the Fourth Amendment because the private actor's viewing of the images extinguished Appellant's reasonable expectation of privacy in the images of child pornography. Thus, the subsequent police viewing of the contraband was not a "search" under the Fourth Amendment. *See Coolidge v. New Hampshire*, 403 U.S. 443, 489 (1971) (providing that when a private actor of her own accord produced evidence such

as guns and clothes for police inspection, "it was not incumbent on the police to stop her or avert their eyes"); *Corely*, 491 A.2d at 832 (holding that the acts of an individual do not "become imbued with the character of 'state action' merely because they are in turn relied upon and used by the state in furtherance of state objectives"). In other words, by the time Officer Maloney viewed the illegal images, Appellant's expectation of privacy in them had already been compromised by Eidenmiller's examinations of the otherwise private information stored in Appellant's computer files.

We next examine whether Officer Maloney's viewing of the images exceeded the search conducted by Eidenmiller. This inquiry is easily determined by the same passage of the suppression hearing testimony cited above. Officer Maloney testified that Eidenmiller showed him "the exact route taken to find the images," *id.,* at 30, and that after viewing the images, Officer Maloney directed Eidenmiller to shut down the computer. *Id.* at 29. The record supports the suppression court's finding that Officer Maloney never expanded upon Eidenmiller's actions, but merely viewed the images that Eidenmiller presented to him. Trial Court Opinion, 10/3/2016, at 11.

Accordingly, Officer Maloney did not exceed the scope of Eidenmiller's private search. As in *Jacobsen*, Officer Maloney's actions infringed upon no legitimate expectation of privacy and, hence, were not a "search" within the meaning of the Fourth Amendment. Also as in *Jacobsen*, Officer Maloney's assertion of dominion and control over Appellant's laptop, which contained the contraband images, constituted a "seizure," although it was not an unreasonable one as the privacy interest in the contraband images, the only information from the laptop revealed to the officer, had already been compromised by the private search. It should not be ignored that police subsequently obtained a warrant to view the remaining files on Appellant's laptop. *See* N.T., 7/7/2016, at 31 (providing that ten days after seizing Appellant's laptop, the police obtained a search

warrant). As noted, *supra* at note 6, Appellant does not suggest that the police independently reviewed the remaining files on Appellant's laptop computer at a time prior to obtaining the warrant.

While not binding on this Court, we find persuasive the decisions of the federal circuit courts of appeals that have applied the *Jacobson* construct to the private search of a computer in a similar manner. To illustrate, in *United States v. Lichtenberger*, *supra*, the defendant's girlfriend hacked into his computer, discovered thumbnail images of adults engaging in sexual acts with minors, and contacted the police. When an officer arrived at the residence, the girlfriend informed him that she hacked the computer belonging exclusively to the defendant and found child pornography. As occurred in the instant appeal, the officer then asked the girlfriend to show him what she had discovered. Unlike the instant case, however, the girlfriend displayed to the officer not only the images that she had recovered during the private search, but also displayed additional images of child pornography. The officer then directed the girlfriend to shut down the computer and seized it.

The defendant was later indicted on charges of child pornography and moved to suppress all evidence obtained pursuant to the officer's warrantless review of the laptop. The defendant contended that when the officer directed the girlfriend to show him what she had found, the girlfriend had become an agent of the government rendering the search impermissible under the Fourth Amendment. The government countered that the Officer's review of the images was valid under the private search doctrine as set forth in *Jacobson*. The district court granted the defendant's suppression motion.

The Sixth Circuit Court of Appeals affirmed the district court's order granting suppression, but did so based only on the second prong of the *Jacobsen* test, finding that the police exceeded the scope of the private search. As an initial matter, the court

concluded that the private search doctrine applied because the defendant's girlfriend acted solely as a private citizen when she searched the defendant's computer, invited the officer into the residence, and showed the officer what she had found. Pursuant to *Jacobsen*, the Court of Appeals agreed with the district court that the case presented an "after-the-fact confirmation of a private search." *Id.* at 484.

The Court of Appeals in *Lichtenberger* viewed the next inquiry under *Jacobsen* as whether the officer's search remained within the scope of the private search. *Id.* at 485. The court acknowledged how "searches of physical spaces and the items they contain differ in significant ways from searches of complex electronic devices under the Fourth Amendment." *Id.* at 487 (referencing *Riley v. California, supra*). The court reasoned that the magnitude of private information retained in a computer manifested itself in *Jacobsen's* requirement that the officer has to proceed with "virtual certainty" that the inspection of the laptop and its contents would not tell the police anything more than they had already learned from the individual who conducted the private search. *Id.* at 488. Stated differently, when the governmental viewing is limited to the scope of the private search, the magnitude of confidential files and information contained in one's computer is protected from the prying eyes of the government unless and until a warrant is obtained. Absent a warrant, the government may view only those files that were disclosed pursuant to the private search.

The *Lichtenberger* court found that this requirement was not satisfied because the officer admitted that he may have asked the girlfriend to open files that she had not previously opened during her private search. *Id.* Finding a lack of certainty that the officer's review was limited to the photographs discovered during the girlfriend's earlier private search, the Court of Appeals held that there was a real possibility that the officer exceeded that search and could have discovered other information on the defendant's

laptop that was private, such as bank statements or personal communications unrelated to the allegations prompting the search. The court concluded that this discovery was precisely what the *Jacobsen* decision sought to avoid in articulating its beyond-the-scope test. *Id.* at 488-89.

The *Lichtenberger* court asserted that it was not alone in its approach to these modern considerations under the Fourth Amendment, as other circuit courts have placed a similar emphasis on "virtual certainty" in their application of *Jacobsen* to searches of contemporary electronic devices. *Id.* at 489-91 (citing *United States v. Runyan*, *supra* (holding that, under *Jacobsen*, police did not exceed the private search of defendant's computer disks where his ex-wife had privately searched them and found child pornography, but did exceed the scope of the private search when police examined disks not viewed during that private search as police had no "substantial certainty" regarding their contents); *Rann v. Atchison*, *supra* (applying *Jacobsen* to a subsequent police viewing of privately searched digital storage devices such as a memory card and computer zip drive that the victim of child pornography and her mother provided to police, and holding that police did not exceed the private search as they were "substantially certain" that the devices contained child pornography based upon the statements of the private parties); *United States v. Tosti*, *supra* (upholding an officer's viewing of contraband under *Jacobsen* where the computer technician repairing the defendant's computer disclosed to police thumbnail images containing child pornography and the police viewed only the images that the technician had already viewed)).[13]

---

[13] Additional federal circuit court decisions have applied the *Jacobsen* private search construct to searches of digital information stored on electronic devices. *See e.g. United States v. Reddick*, 900 F.3d 636 (5th Cir. 2018) (applying *Jacobsen* to an officer's viewing of the defendant's computer files and concluding that because the child pornography files were deemed suspicious by a private actor and police did not expand the private actor's search, the Fourth Amendment was not violated); *United States v. Johnson*, 806 F.3d

*D. Conclusion*

In the instant case, we have applied the High Court's accepted *Jacobsen* criteria and have concluded, based on the clear record, that Eidenmiller was not acting as an agent of the government when he discovered the thumbnail images of child pornography, and that Officer Maloney viewed only those images that Eidenmiller had presented to him based on Eidenmiller's private search. As Officer Maloney did not exceed the private search conducted by Eidenmiller, there is no violation of the Fourth Amendment under *Jacobsen*.

We clarify that we are not adopting the Commonwealth's position that one abandons his expectation of privacy in his computer files when he delivers his computer to a commercial retail establishment for repair. Further, we reject as inapplicable the narrower holding of the Superior Court in *Sodomsky* that one abandons his expectation of privacy when he consents to having the computer repaired in a manner that may result in the exposure of private information stored on the computer files. Instead, we hold that

---

1323 (11th Cir. 2015) (applying *Jacobsen* to the private search of a cell phone and concluding that the police exceeded the scope of the private search when the officer viewed a video that the private actor had not viewed); *United States v. Goodale*, 738 F.3d 917 (8th Cir. 2013) (holding that it is immaterial to application of the private search doctrine under *Jacobsen* whether the private party who conducted the search of the defendant's computer had the defendant's consent to turn over to police illegal images discovered on the defendant's computer; so long as the police officer did not exceed the scope of the private search, the Fourth Amendment was not violated); *United States v. Cameron*, 699 F.3d 621 (1st Cir. 2012) (holding that the Fourth Amendment was not violated when Yahoo!, Inc. searched an account after receiving an anonymous tip that it contained images of child pornography because there was no evidence that the government had any role in investigating or participating in the private search); *Commonwealth v. Jarrett*, 338 F.3d 339 (4th Cir. 2003) (holding that the search of the defendant's computer conducted by a hacker did not implicate the Fourth Amendment because the hacker was not acting as an agent of the government when he conducted the search).

an individual's expectation of privacy at the moment he relinquishes his computer to a commercial establishment for repair is irrelevant to our constitutional analysis because the computer technicians examining the contents of the computer are private actors, not subject to the restrictions of the Fourth Amendment.[14]  Thus, our decision to affirm the lower court's judgment based upon the private search doctrine is not premised upon a preference to avoid the issue presented but, rather, arises from the inapplicability of Fourth Amendment jurisprudence to non-state actors.

We observe that the ramifications of applying an abandonment theory to the facts presented are profound, as the abandonment theory, unlike the private search doctrine, lacks the constitutional safeguard of a restricted scope of the government's subsequent examination of the evidence discovered.  Under an abandonment theory, the individual "checks his privacy interest at the door" when he requests a repair that may reveal the contents of private files stored on his computer.  Once that expectation of privacy has been abandoned, there is no constitutional protection to be afforded, and the officer who responds to a report of child pornography found on a computer could potentially search every file on it without restriction.  Applied to the facts presented, a true application of an abandonment theory would provide that when Officer Maloney arrived at CompuGig to view the images of child pornography found by Eidenmiller, he could have examined all of the files contained on Appellant's laptop, as any expectation of privacy in those files had been abandoned.[15]

---

[14] For this same reason, the federal cases of *United States v. Jones*, 565 U.S. 400 (2012), and *Carpenter v. United States*, 138 S.Ct. 2206 (2018), are inapplicable as they involve government searches and not searches conducted by a private individual.

[15] Additionally, under an abandonment theory the court would examine whether a reasonable person should have known that his private computer files would be revealed during the completion of a particular computer repair.  As Appellant cogently argues

Under the private search doctrine, however, as explained *supra*, the officer responding to a report of child pornography found on a computer would be limited to viewing only those images revealed in the private search. Accordingly, application of the private search doctrine to the facts presented more narrowly tailors the scope of the governmental examination of the information revealed by the private search and offers greater protection of the privacy interests involved.

That is not to say that the application of the private search doctrine always affords greater protection. Where an unscrupulous computer technician takes it upon himself to peruse one's personal information contained in various files stored on the computer, unrelated to the requested repair, and that technician later finds and reports to law enforcement images of child pornography, the Fourth Amendment is not implicated so long as the police officer does not exceed the scope of the private search conducted. This unsavory result, however, is not the fault of the application of a flawed legal theory, but rather a consequence of the Fourth Amendment's guarantee against unreasonable searches *by the government*. For these reasons, we conclude that the abandonment rationale employed in *Sodomsky* has no application to searches conducted by private individuals.

Accordingly, we affirm the judgment of the Superior Court on these independent grounds.

Justices Todd, Dougherty and Mundy join the opinion.

Chief Justice Saylor files a dissenting opinion in which Justice Donohue joins.

Justice Wecht files a concurring and dissenting opinion.

---

herein, the disparity of knowledge of computer operability possessed by average citizens would render this determination difficult to resolve in many cases.