J-A29015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REGINALD TIMOTHY WARD, JR. | : | |
| | : | |
| Appellant | : | No. 37 WDA 2023 |

Appeal from the Judgment of Sentence Entered December 5, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003942-2022

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                         **FILED:  February 15, 2024**

Reginald Timothy Ward, Jr. appeals from the judgment of sentence of one year of probation following his conviction for carrying a firearm without a license.  We affirm.

The trial court summarized the pertinent facts as follows:

On April 2, 2022, . . . Sergeant John O'Leary of the Jefferson Hills Police Department observed a red Pontiac tailgating another vehicle.  Sergeant O'Leary initiated a traffic stop of the vehicle. He approached the vehicle and requested [Appellant's] driver's license and as [Appellant] was sifting through his wallet, he noticed a permit to carry a concealed weapon.  [Appellant] did not have his driver's license with him but provided an identification card.  Sergeant O'Leary, at that point knowing that [Appellant] may have a concealed weapon, inquired, and [Appellant] responded in the affirmative.  At that point, Sergeant O'Leary went to his vehicle to verify whether [Appellant] had a valid driver's license given that [he] did not have the actual physical license with him.

As was testified at the suppression hearing, Sergeant O'Leary utilized a database and ascertained that [Appellant] did not have

a valid driver's license. He also testified that there are various other data items that they check simultaneously, such as protection from abuse orders, outstanding warrants and concealed carry permits issued by the counties. Sergeant O'Leary became aware at this point that the conceal permit of [Appellant] was expired. Based upon these facts, [Appellant] was charged with carrying a firearm without a license, in addition to the motor vehicle violations.

Trial Court Opinion, 4/18/23, at 1-2 (cleaned up).

Appellant filed a motion to suppress the evidence concerning the status of his firearm permit due to what he claimed was an unlawful seizure. The trial court held a hearing, wherein it denied Appellant's motion. The case proceeded to a bench trial on the evidence adduced at the suppression hearing. Appellant was convicted of carrying a firearm without a license, as well as the two summary offenses of driving without a license and following too closely. This timely appeal followed. The trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied. The trial court thereafter issued a Rule 1925(a) opinion.

Appellant proffers the following question for our review: "Did the trial court err by denying [Appellant]'s motion to suppress the evidence when the police officer wrongfully extended a traffic stop to conduct an investigation regarding whether [Appellant] possessed a firearm and valid permit?" Appellant's brief at 6.

We begin with a review of the relevant legal principles. Preliminarily, we set forth our standard of review for the denial of a suppression motion:

An appellate court's standard of reviewing the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Thus, our review of questions of law is *de novo*. Our scope of review is to consider [the evidence offered by the Commonwealth] only and the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole.

*Commonwealth v. Shaffer*, 209 A.3d 957, 968-69 (Pa. 2019) (citations omitted). Where the issue on appeal relates solely to a suppression ruling, we examine "only the suppression hearing record." *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017).

Appellant argues that the trial court erred in denying his motion to suppress because the police officer impermissibly extended the traffic stop to ascertain the status of his concealed carry permit. *See* Appellant's brief at 11. Thus, he contends that he was subjected to an unreasonable seizure. It is bedrock constitutional law that "[t]he Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa.Super. 2019) (citation omitted).

Instantly, Appellant was stopped for committing a traffic offense while driving a motor vehicle. The United States Supreme Court has observed the following concerning traffic stops:

The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission" – to address the traffic violation that warranted the stop, and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when the tasks tied to the traffic infraction are – or reasonably should have been completed.

A traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket . . . . An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.

*Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015). In short, "[t]he seizure remains lawful only so long as [unrelated] inquiries do not measurably extend the duration of the stop." *Id*. at 355 (cleaned up).

In the case *sub judice*, Appellant argues that the "initial investigatory detention for tailgating was improperly extended to inquire into a gun permit issue" because Sergeant O'Leary checked for information regarding Appellant's concealed carry permit. Appellant's brief at 10, 22. Therefore, Appellant avers that his constitutional rights were violated and suppression is warranted. Appellant analogizes his case to this Court's decision in *Commonwealth v. Malloy*, 257 A.2d 142, 149 (Pa.Super. 2021). *See* Appellant's brief at 19-20.

Therein, an officer stopped a vehicle based upon the improper placement of a license plate. When asked for identification, Malloy produced a lanyard, which the officer associated with an individual working as an armed

security guard, causing the officer to ask whether he had a firearm. Malloy responded affirmatively. For safety, the officer directed him to exit the vehicle so he could secure the firearm, and then requested his firearms credentials. During the ensuing fifteen to twenty minutes, the officer conducted various checks with local detectives and the Pennsylvania State Police to determine whether Malloy had a valid license to carry. He was subsequently arrested after they determined that he did not. The trial court denied suppression, but this Court rejected that conclusion. In so doing, we stated as follows:

> [O]nce [the officer] secured the firearm, [Malloy's] legal authority to own or possess a gun clearly bore no discernible relationship to individual safety or security within the context of the traffic stop. Under these circumstances, where seizure of a firearm has substantially diminished the risk to officers and others who may be present during a lawful vehicle detention, we see no reason why the Fourth Amendment, in the absence of independent justification, suspicion, or cause, should tolerate even a 10- to 15-minute extension of a routine traffic stop for the investigation of a secondary criminal matter. Hence, the request challenged in this case does not fall within the category of actions the police may undertake during a lawful traffic stop based solely on concerns for safety and security and without independent justification or cause.

*Malloy*, *supra*, at 153.

Appellant argues that, as in *Malloy*, the officer impermissibly prolonged the traffic stop to investigate the status of Appellant's concealed carry permit, a matter that was not "mission-related." Appellant's brief at 22-23. Hence, Appellant requests that we vacate the order denying suppression and remand

for a new trial where any evidence of the status of Appellant's firearm permit is suppressed.[1]  *Id.* at 23.

We are unpersuaded by Appellant's contentions, as the certified record supports the trial court's findings that suppression was not warranted under the circumstances of this case.  As the trial court noted, after Appellant handed Sergeant O'Leary his identification card, the sergeant returned to his vehicle to examine the status of Appellant's driver's license.  **See** Trial Court Opinion, 4/18/23, at 2.  Sergeant O'Leary testified as to the other information that law enforcement officials simultaneously receive as a result of this query.  **Id**. at 2.  Indeed, he detailed that when he checked his mobile data terminal ("MDT") to ascertain the status of Appellant's driver's license, a screen displaying the status of Appellant's concealed carry permit "[came] up at the same time." N.T. Suppression Hearing, 12/5/22, at 7.  The MDT revealed that Appellant did not have a valid driver's license and "when the concealed carry screen came up for Westmoreland County[,] it indicated that that permit to carry

---

[1] Appellant also relies upon **Commonwealth v. Hicks**, 208 A.3d 916, 937 (Pa. 2019), wherein our High Court stated that mere possession of a concealed firearm alone is not suggestive of criminal activity.  Appellant avers that Sergeant O'Leary had no reason to suspect Appellant was involved in criminal activity and, accordingly, unlawfully investigated the legality of his concealed carry permit.  **See** Appellant's brief at 21-22.  However, **Hicks** is inapt because, there, the officer stopped someone solely because he observed a firearm.  **See Hicks**, **supra** at 937.  Here, Appellant was legally stopped by Sergeant O'Leary for a traffic violation.  Moreover, as discussed fully *infra*, Sergeant O'Leary did not investigate the legality of Appellant's concealed carry permit; that information appeared on his screen automatically during the permissible, routine check of Appellant's driver's license.

concealed had expired over a year prior." *Id*. at 8. Sergeant O'Leary continued: "Various PennDOT form[s] come up; if somebody is wanted, a form will come up, if they have a concealed carry permit or have ever had one, that screen comes up as well, and it indicates validity." [2] *Id*.

Based on this testimony, the trial court correctly held that Sergeant O'Leary's discovery of the status of Appellant's concealed carry permit did not violate his constitutional rights as it occurred simultaneously with the mission-related check of the MDT to learn the status of Appellant's driver's license. *See* Trial Court Opinion, 4/18/23, at 5-6. In fact, as noted, Sergeant O'Leary did not conduct a separate search to determine whether the concealed carry permit that he had observed was valid. *See* N.T. Suppression Hearing, 12/5/22, at 7-8. Accordingly, there simply was no extension of the stop. In sum, the examination of the screen that appeared contemporaneously with information regarding Appellant's driver's license did not extend the stop and, as such, Appellant's arguments do not entitle him to relief.[3] *See Rodriguez*, *supra* at 355.

---

[2] Sergeant O'Leary additionally confirmed that if a person has a Protection from Abuse order lodged against him, a form so indicating will also appear automatically. *See* N.T. Suppression Hearing, 12/5/22, at 13.

[3] Furthermore, contrary to Appellant's implied assertion, Sergeant O'Leary was permitted to inquire about whether Appellant had a firearm. This Court has stated that such a request "falls within the category of actions police officers may undertake during a lawful traffic stop based solely on concerns for their safety and security and without independent justification or cause." *(Footnote Continued Next Page)*

For the foregoing reasons, the trial court did not err in denying Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  2/15/2024

---

*Commonwealth v. Ross*, 297 A.3d 787, 792 (Pa.Super. 2023).  Notably, the officer in **Ross** posed such a question with no knowledge as to whether Ross had a firearm.  Although not required, Sergeant O'Leary had independent justification to inquire about the firearm since he observed the concealed carry permit and, thus, there was an increased likelihood that Appellant had a firearm on his person and may have posed a danger to the officer's safety.  Hence, Appellant's challenge to Sergeant O'Leary's justification for asking about the firearm fails.