J-S28031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMUEL J. GAROFALO | : | |
| | : | |
| Appellant | : | No. 1473 MDA 2018 |

Appeal from the Judgment of Sentence Entered March 13, 2018
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0001317-2015

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED: OCTOBER 17, 2019**

Samuel J. Garofalo appeals from the March 13, 2018 judgment of sentence imposed after he was found guilty of harassment.  After review, we affirm.

The record details a long-standing, acrimonious relationship between Appellant and his neighbors, John and Christine Ofcharsky.  In 2012, Appellant was charged with summary harassment in violation of 18 Pa.C.S. § 2709(A)(1).  After the magisterial district judge found him guilty, he timely filed a summary appeal to the Court of Common Pleas of Luzerne County docketed at 13-SA-21.  On May 14, 2013, prior to the scheduled hearing, Appellant and the Ofcharskys agreed to postpone the trial conditioned on the

---

[*] Retired Senior Judge assigned to the Superior Court.

parties refraining from all contact with each other indefinitely. Trial Court Opinion, 11/7/18, at 2.

From 2013 to 2015, the Ofcharskys called the police several times to report incidents involving Appellant. On May 3, 2015, police responded to a call from Mr. Ofcharsky complaining that Appellant shot a nail onto his property. Affidavit of Probable Cause, 5/21/15, at 1. Police diffused the situation and left, only to be summoned again by Mr. Ofcharsky later that day after Appellant allegedly pointed a gun at his son.[1]

On May 7, 2015, a meeting took place between the Luzerne County District Attorney's Office, the police, and the Ofcharskys and their attorney. Consequently, Appellant was charged on May 21, 2015 at CP-35-CR-1317-2015, with stalking, harassment, disorderly conduct, criminal mischief, and scattering rubbish upon land, based upon conduct that occurred from January 1, 2013, through May 3, 2015. At the preliminary hearing, the trial court dismissed the stalking charge and bound over the other charges for trial.

The Honorable Vito P. Geroulo held a settlement conference on October 19, 2015, which he characterized as "an effort to resolve discomfort that has arisen in a neighborhood that led to the filing of charges" at 13-SA-21 and 1317 CR 2015. N.T., 10/19/15, at 2. Noting dissolution of the "uneasy peace" that resulted from the earlier agreement to postpone charges at 13 SA 21, the parties reached a new agreement that provided:

---

[1] This incident was captured on videotape.

(1)     The charges would be held in abeyance for a period of two years, and without prejudice for the charges to proceed if the agreement should fall apart;

(2)     Both Appellant and John Ofcharsky agreed that they would not point any hand-held camera in the direction of each other's homes;

(3)     Both would have security cameras installed to monitor their own properties, and court staff would go to the properties and verify the placement of the camera;

(4)     Both parties would agree to refrain from any contact with each other, verbal or otherwise, such as no use of automobile horns or other device that would attract non-visual attention;

(5)     There would be no communication indirectly through other parties such as friends and acquaintances that would be violative of the no communication rule if it were performed by the parties;

(6)     There would be no communication through telephone, text messaging, social media, that would be inconsistent with the spirit of the agreement;

(7)     The parties would obtain an estimate for the cost of planting a visual barrier on the line between the two properties, and split the cost of erecting that barrier.

N.T., 10/19/15, at 3-6.  After placing the terms of the agreement (hereinafter "the Agreement") on the record, the court turned first to Mr. Ofcharsky, the complainant, and asked him whether he agreed to be bound by the terms of the Agreement.  He responded, "I do."  *Id*. at 7.  The same procedure was followed with Appellant, who also stated on the record that he agreed.  The court then stated, "in accord with Rule 586 of the Pennsylvania Rules of

Criminal Procedure,[2] I'm going to enter this as a binding order of court[,]" and advised the parties that the court would have the authority to employ its contempt powers to enforce it by a $500 fine or imprisonment up to six months. *Id*. at 7. No separate order was entered.

On August 16, 2016, the Commonwealth filed a motion for contempt alleging that the police department had responded to numerous reports of harassing behavior and communication by Appellant. The court issued a rule to show cause directing Appellant to show cause why he should not be held in contempt, returnable September 8, 2016. Instead of proceeding to a contempt hearing, however, the court ordered Appellant and the Commonwealth to mediate the case. When mediation did not occur, the court consolidated the contempt hearing with the pending charges for disposition.

_____

[2] That Rule provides:

> When a defendant is charged with an offense which is not alleged to have been committed by force or violence or threat thereof, the court may order the case to be dismissed upon motion and a showing that:
>
> (1) the public interest will not be adversely affected; and
>
> (2) the attorney for the Commonwealth consents to the dismissal; and
>
> (3) satisfaction has been made to the aggrieved person or there is an agreement that satisfaction will be made to the aggrieved person; and
>
> (4) there is an agreement as to who shall pay the costs.

Pa.R.Crim.P. 586.

- 4 -

Prior to trial, the Commonwealth filed an amended criminal information at No. 1317 CR 2015, reducing the original charges to one count of harassment.

A non-jury trial took place on December 8, 2017. The Commonwealth introduced evidence that Appellant engaged repeatedly in conduct calculated to annoy and alarm the Ofcharskys from 2013 through 2015. John Ofcharsky testified that on May 2, 2015, as he was pulling into his driveway, Appellant "was harassing [him] calling [him] asshole and various other types of names." N.T., 12/8/17, at 9. Mr. Ofcharsky also found nails on his property that morning, as he had for more than a year before. At Mr. Ofcharsky's direction, his son Paul videotaped Appellant that day purportedly throwing a nail onto the Ofcharsky property, and later holding and pointing an AR-15 rifle "directly at [Paul] at the window." *Id*. at 15, 17. Mr. Ofcharsky described Appellant's "constant harassment," consisting of "name calling, finger throwing . . . [and] blowing the horn." *Id*. at 18-19. According to Mr. Ofcharsky, Appellant would sexually harass his wife "by grabbing his crotch." *Id*. at 19. Critically, Mr. Ofcharsky testified that all of these behaviors occurred from "spring 2013 right up to the present." *Id*. at 21.

Appellant testified that his long-standing contentious relationship with the Ofcharskys began when their sons got in a fight and Mr. Ofcharsky called the police. *Id*. at 33. He recounted how he tinted his living room and dining room windows to prevent the Ofcharskys from looking into his home. He testified that he, too, had found nails in his driveway. Appellant acknowledged that, while his friend John Thompson was at his home on May 3, 2015, he was

- 5 -

holding his AR-15 rifle. He denied, however, that he pointed the gun at Paul Ofcharsky. As to the alleged sexual harassment of Mrs. Ofcharsky, Appellant told the court that "sometimes [he] sneeze[s] five and six times in a row and sometimes something leaks out" so he grabs "his crotch." *Id*. at 48. He denied that he engaged in any prohibited conduct after the date of the Agreement.

Mrs. Ofcharsky offered rebuttal testimony regarding Appellant's conduct after the date of the Agreement. She authenticated a photograph that she took on June 17, 2016, which was admitted as Commonwealth Exhibit 3. She testified that it depicted Appellant driving his truck and giving her the middle finger. *Id*. at 68.

The court characterized Appellant's explanations for his behavior as incredible and disingenuous, and found him guilty of harassment. Trial Court Opinion, 11/7/18, at 11. However, the court also found Appellant not guilty of contempt of the Agreement, stating that there was no proof that Appellant engaged in the harassing conduct after the October 19, 2015 order. Order, 12/15/17.[3]

Thereafter, Appellant filed a document titled "Petition to Enforce Settlement Agreement," in which he pled that the court could not find him

---

[3] In its supplemental opinion, the trial court further explained that it did not hold Appellant in contempt as the "Commonwealth failed to establish [that] numerous incident reports [were filed] by the South Abington Police Department as alleged in the . . . contempt petition." Supplemental Rule 1925(a) Opinion, 5/24/19, at 4.

guilty of harassment because it found him not guilty of contempt of the Rule 586 agreement. After issuing a rule to show cause, and hearing argument, the court denied the petition and sentenced Appellant to ninety days of probation and one month of house arrest on the harassment charge. *See* N.T., 3/13/18, at 2, 7; Order, 3/13/18.

Appellant filed a timely motion for reconsideration of his sentence in which he maintained that his sentence was illegal and excessive. He also filed post-trial motions in which he challenged the sufficiency and weight of the evidence, and alleged that the court erred in not enforcing the Rule 586 agreement. After both filings were denied by operation of law, Appellant timely appealed. Appellant and the trial court complied with Pa.R.A.P. 1925. The trial court subsequently prepared a supplemental opinion to address the only issue presently before us: "Whether the trial court erred in denying Appellant's petition to enforce the Agreement after it found that Appellant did not violate the terms of that Agreement." Appellant's brief at 9 (unnecessary capitalization and punctuation omitted).

As stated, Appellant's issue presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Dawson***, 87 A.3d 825, 826-27 (Pa.Super. 2014). Appellant refers to the Agreement as a "plea agreement" that was breached by the Commonwealth, and argues that he is entitled to the benefit of the bargain. Appellant's brief at 18. He maintains further that we must construe any ambiguities in the Agreement against the Commonwealth. ***Id***. Appellant

contends that his acquittal on the contempt charge constituted a finding that he did not violate the Agreement. Thus, he argues that the Agreement holding the prosecution in abeyance should have remained in effect for the remainder of its two-year term, and then the charges should have been dismissed. *Id*. at 20.

The Commonwealth counters that this was not a plea agreement, but one entered pursuant to Pa.R.Crim.P. 586. Furthermore, the Commonwealth maintains that the acquittal on the criminal contempt charge "does not translate into a finding that [Appellant] did not violate" the Agreement. Commonwealth's brief at 8. It contends that Appellant "violated several terms of the" Agreement, and it argues that it had the discretion to prosecute Appellant on the original charges, rather than dismiss them.

In its supplemental Rule 1925(a) opinion, the trial court characterized the October 19, 2015 settlement conference as "pseudo-civil" in nature and resulting in an agreement between the Ofcharskys and Appellant to defer Appellant's criminal prosecution for two years subject to certain conditions. Supplemental 1925(a) Opinion, 5/24/19, at 1. The court noted first that the prosecution was not a breach of the Agreement as there was no prosecution for two years. Furthermore, Appellant did not seek dismissal of the harassment charge after the expiration of the two-year period, *i.e.*, after October 19, 2017, and prior to trial. While the trial court concluded that the Commonwealth failed to present sufficient evidence to hold Appellant in contempt, it specifically "did not find the Appellant satisfied the October 19,

- 8 -

2015 [A]greement so as to compel the Commonwealth's consent." **Id**. at 7 n.8.

The Agreement herein was not a plea agreement, as Appellant did not enter a guilty or *nolo contendere* plea. Nor did the Agreement conform to Pa.R.Crim.P. 586. One could argue that the charges involved a threat of force or violence that disqualified them for treatment under that Rule. Furthermore, Rule 586 contemplates dismissal of charges with the approval of the Commonwealth when an agreement is reached; the charges herein were merely held in abeyance.[4] In addition, the remedy for violation of a Rule 586 agreement is re-institution of the charges, not contempt.[5]

At its essence, the Agreement was an agreement to forbear from prosecuting Appellant on the harassment charge for a period of two years provided he complied with certain conditions. While it does not provide specifically that the charges would be dismissed after two years if all conditions were met, we note that Rule 586 contemplates dismissal of charges upon satisfaction of an agreement, with the consent of the Commonwealth.

---

[4] The trial court correctly observed that trial on the harassment charge at 1317-CR-2015 commenced after the two-year abeyance period of the Agreement had expired.

[5] Assuming that the court's contempt power properly could be used to enforce the Agreement, the court incorrectly advised the parties that they could be subject to imprisonment for violating it. Since any contempt would have occurred outside the courtroom, it could only be indirect criminal contempt, which is not punishable by commitment, but by fine only. **See** 42 Pa.C.S. § 4133; **see also In the Interest of E.O.**, 195 A.3d 583, 585 (Pa.Super. 2018) (discussing differences between civil and criminal contempt, and direct and indirect criminal contempt).

Appellant was seeking specific performance of that forbearance agreement, specifically dismissal of his harassment conviction after a finding that he was not guilty of criminal contempt. We find, however, that the trial court's acquittal of Appellant of indirect criminal contempt was not a finding that Appellant satisfied the conditions of the Agreement, but that the Commonwealth failed to prove the allegations in the contempt motion.

In order to establish indirect criminal contempt, "the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent." ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 110 (Pa.Super. 2007). The Commonwealth alleged as the basis for the contempt that it had received numerous verbal and written incident reports from the South Abington Police Department indicating that Appellant was in violation of the court's order. Commonwealth's Motion for Contempt, 8/16/16, at 1. The Commonwealth offered no testimony from the police officers who supplied that information or any documentation to support its allegations. In short, the Commonwealth defaulted in its proof of the allegations of contempt in the motion.

However, our review of the record reveals evidence that Appellant failed to meet the conditions of the Agreement after its execution and that he was not entitled to its specific enforcement. John Ofcharsky testified that Appellant continued to engage in verbal name-calling and horn honking, as well as other

harassing behavior "from spring 2013 right up to the present." **See** N.T., 12/8/17, at 21. Mrs. Ofcharsky offered photographic evidence that Appellant made an obscene gesture at her in 2016, almost one year after the date of the Agreement. Such evidence establishes that Appellant failed to comply with the *proviso* that "the parties would agree to refrain from any contact with each other, verbal or otherwise, such as no use of automobile horns or other device that would attract non-visual attention." Agreement, 10/19/15, at 3 ¶(4).

For this reason, we affirm the judgment of sentence on this alternate basis. **Commonwealth v. Shaffer**, 209 A.3d 957 (Pa. 2019) (citing **Commonwealth v. Wholaver**, 177 A.3d 136, 145 (Pa. 2018) (holding that this Court may affirm a valid judgment or order for any reason appearing of record)).

Judgment of sentence affirmed.

Judge McLaughlin joins the memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/2019

- 11 -